UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED UNION OF ROOFERS, WATERPROOFERS & ALLIED WORKERS LOCAL UNION NO. 8, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | CLASS ACTION |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | CLASS ACTION COMPLAINT FOR |
| vs. | ) ) | VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| | ) | |
| GREAT LAKES DREDGE & DOCK CORPORATION, JONATHAN W. BERGER, WILLIAM S. STECKEL and BRUCE BIEMECK | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |

Plaintiff, United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 ("Local No. 8"), individually and on behalf of all others similarly situated, alleges the following against Great Lakes Dredge & Dock Corporation ("Great Lakes" or the "Company"), Jonathan Berger ("Berger"), William S. Steckel ("Steckel") and Bruce Biemeck ("Biemeck"). Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which included, without limitation: (a) review and analysis of public filings made by Great Lakes with the Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants; (c) review of news articles, shareholder communications, conference call transcripts, and postings on Great Lakes' website concerning the Company's public statements; and (d) review of other publicly available information concerning Great Lakes.

## I. NATURE OF THE ACTION

1. This is a federal securities class action brought on behalf of all persons or entities who purchased or otherwise acquired shares of Great Lakes securities between August 7, 2012 and March 14, 2013, inclusive (the "Class Period"), seeking to pursue remedies under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

2. Defendant Great Lakes is the largest provider of dredging services in the United States and a major provider of commercial and industrial demolition and remediation services. The company's dredging segment is involved in projects consisting of port expansion, land reclamations, trench digging, beach nourishment projects and maintenance dredging that includes the re-dredging of previously deepened waterways and harbors to remove silt, sand, and other accumulated sediments. Great Lakes has a fleet of 33 dredges, including 8 deployed

internationally; 19 material transportation barges; 2 drill boats; and various other specialized support vessels. Its demolition segment provides commercial and industrial demolition services. It is involved in exterior demolition that comprises dismantling and demolition of structures and foundations; and interior demolition, which includes removing specific structures within a building. This segment also engages in site development, removal of asbestos and other hazardous materials, and remediation of contaminated demolition materials. Great Lakes is headquartered in Oak Brook, Illinois.

3. During the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts concerning Great Lakes' business, operations and prospects. Specifically, Defendants made false and misleading statements and failed to disclose that it had recognized revenue in a manner not consistent with its accounting policy in that certain pending change orders where client acceptance was not finalized were included as revenue. In addition, the Company failed to disclose material weakness in its internal controls to detect or prevent misstatements in its financial statements.

4. As a result of Defendants' wrongful acts, false and misleading statements and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## II.    JURISDICTION AND VENUE

5. This action arises under Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)], and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b 5].

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

7.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b).  Many the acts and conduct complained of herein, including the dissemination of materially false and misleading information to the investing public, occurred in substantial part in this District.  Great Lakes is headquartered and maintains offices in this District.

8.     In connection with the acts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.   <u>THE PARTIES</u>

12.    Plaintiff, Local No. 8, purchased Great Lakes common stock during the Class Period as set forth in the Certification attached hereto and incorporated herein by reference and suffered damages thereon.

13.    Defendant Great Lakes engages in the business of marine construction, dredging, and commercial and industrial demolition.  The Company deepens and maintains waterways, shipping channels, and ports; and creates and maintains beaches, builds docks and restores aquatic and wetland habitats.

14.    Defendant Jonathan W. Berger has served as Chief Executive Officer at Great Lakes since September 2010 and as a Director of the Board since December 2006.  He also serves as Chair of the Audit Committee.

15.    Defendant Bruce Biemeck served as President and Chief Operating Officer at Great Lakes since August 2012 and resigned from his positions effective March 13, 2013.  From September 2010 to August 2012, Biemeck served as the Company's Chief Financial Officer.

16.     Defendant William S. Steckel has served as Senior Vice President and Chief Financial Officer of Great Lakes since August 2012.

17.     Defendants Berger, Biemeck and Steckel are collectively referred to herein as the "Individual Defendants."

18.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Great Lakes, their control over, receipt and/or modification of Great Lakes' allegedly materially misleading statements and omissions, and/or their positions with the Company which made them privy to confidential information concerning Great Lakes, participated in the fraudulent scheme alleged herein.  The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

19.     During the Class Period, the Individual Defendants, as senior executive officers of Great Lakes, were privy to confidential, proprietary and material adverse non-public information concerning Great Lakes, its operations, finances, financial condition and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

20.     The Individual Defendants are liable as direct participants in the wrongs complained of herein.  In addition, the Individual Defendants, by reason of their status as senior

executive officers and/or directors, were "controlling persons" within the meaning of §20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Great Lakes' business.

21.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and, through such analysts, to the investing public. The Individual Defendants were provided with copies of the Company's reports and publicly disseminated documents alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

22.     As senior executive officers and/or directors and as controlling persons of a publicly traded company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, and were traded on the NASDAQ and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to Great Lakes' financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so the market price of Great Lakes' securities would be based on truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

23.     The Individual Defendants are liable as participants in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Great Lakes' publicly traded securities by disseminating materially false and misleading statements and/or concealing material adverse facts.

IV.     **SUBSTANTIVE ALLEGATIONS**

A.     **Company Background**

24.     Great Lakes is the largest provider of dredging services in the United States and the only U.S. dredging service provider with significant international operations.  The Company owns the largest and most diverse fleet in the U.S. industry, comprised of over 200 specialized vessels. The Company is also one of the largest U.S. providers of commercial and industrial demolition services primarily in the Northeast.  The Company owns a 50% interest in a marine sand mining operation in New Jersey that supplies sand and aggregate for road and building construction and a 50% interest in an environmental service operation with the ability to remediate contaminated soil and dredged sediment treatment.

25.     During the Class Period, Defendants made false and misleading statements and failed to disclose that it had recognized revenue in a manner not consistent with its accounting policy and that certain pending change orders where client acceptance was not finalized were included as revenue.  In addition, the Company failed to disclose material weakness in its internal controls to detect or prevent misstatements in its financial statements.

B.     **Defendants' False and Misleading Statements**

26.     In regular press releases, conference calls and filings with the SEC, Great Lakes and the Individual Defendants repeatedly made false and misleading statements and omissions concerning the Company's: (i) financial results; (ii) accounting practices; and (iii) internal

controls. These false and misleading statements created the false impression that Great Lakes was meeting target revenue, profit margin percentages and other financial metrics, while artificially inflating the Company's stock price.

27.     Defendants Great Lakes, Berger and Steckel certified the design and reliability of the Company's internal controls, the accuracy of the Company's financial results during the Class Period and certified that the Company had presented these results in compliance with GAAP. However, each of these statements was false and misleading due to Great Lakes' fraudulent accounting scheme wherein certain orders were improperly recorded as revenue even though client acceptance had not been finalized. As a result, the Company overstated important operational metrics such as revenue during the entirety of the Class Period.

28.     Throughout the Class Period, Great Lakes and the Individual Defendants regularly made statements concerning the purported effectiveness and adequacy of Great Lakes' internal financial controls as defined in Rule 13a-15(f) or 15d-15(f) promulgated under the Exchange Act. In reality, however, the Company's internal controls were completely ineffective and/or nonexistent as the Individual Defendants controlled nearly every aspect of Great Lakes' operations and, in turn, directed the Company's fraudulent accounting scheme.

29.     In both of the Company's Form 10-Q SEC filings during the Class Period, Defendants Berger and Steckel made the following representation regarding the effectiveness of the Company's disclosure controls in substantially identical form:

From the 6/30/12 10-Q filed on August 7, 2012:

**Item 4. Controls and Procedures.**

*a) Evaluation of disclosure controls and procedures*

Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the Company's disclosure controls and procedures, as required by Rule 13a-15(b) and 15d-15(b) under the

Securities Exchange Act of 1934 (the "Exchange Act") as of June 30, 2012. Our disclosure controls and procedures are designed to reasonably assure that information required to be disclosed by us in reports we file or submit under the Exchange Act is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding disclosure and is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms.

Our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective in providing such reasonable assurance.

*b) Changes in internal control over financial reporting.*

There have been no changes in our internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act) during the fiscal quarter ended June 30, 2012 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

From the 9/30/12 10-Q filed on November 7, 2012:

**Item 4. Controls and Procedures.**

*a) Evaluation of disclosure controls and procedures*

Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the Company's disclosure controls and procedures, as required by Rule 13a-15(b) and 15d-15(b) under the Securities Exchange Act of 1934 (the "Exchange Act") as of September 30, 2012. Our disclosure controls and procedures are designed to reasonably assure that information required to be disclosed by us in reports we file or submit under the Exchange Act is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding disclosure and is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's rules and forms.

Our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective in providing such reasonable assurance.

*b) Changes in internal control over financial reporting.*

There have been no changes in our internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act) during the fiscal quarter ended September 30, 2012 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

30. The preceding bolded statements were false and misleading at the time they were made because, throughout the Class Period, Great Lakes' internal controls suffered from significant deficiencies, including the following:

(a) On March 14, 2013, Great Lakes admitted the Company suffered from "a material weakness in its internal control over financial reporting" during the Class Period and as a result its financial results for the second and third quarter of fiscal 2012 would be restated.

(b) Great Lakes' admitted that due to accounting improprieties, certain pending change orders where client acceptance was not finalized were included as revenue in violation of Company policy.

31. Accordingly, Defendants' statements during the Class Period that Great lakes had in place effective internal controls over financial reporting was patently false and materially misleading when made. On the contrary, as discussed above, the Company suffered from material deficiencies in its internal controls, which allowed Defendants' fraudulent accounting scheme to occur in the first place and continue unabated for several quarters.

32. Throughout the Class Period, the Company and the Individual Defendants regularly made statements concerning the state and expectation of Great Lakes' finances and operations. Because Defendants' fraudulent accounting scheme artificially inflated the Company's financials, Defendants reported false financial results and made false assurances concerning such metrics. The Company's false financial results and Defendants' false assurances concerning the Company's operations and finances are presented below.

33. On August 7, 2012, Great Lakes issued a press release reporting on earnings for the second quarter of 2012. The Press Release stated in pertinent part the following:

Chief Executive Officer Jonathan Berger said, "The dredging division performed well this quarter, after weather impacted results in the first quarter of 2012. Backlog remained at a high level, $455 million, at June 30, 2012, despite the slow domestic bidding during the second quarter. The demolition segment continues to perform on its projects in backlog. A large portion of the demolition backlog

earned in the quarter relates to new management's focus on large complex projects with higher margins, such as bridge demolition and industrial, municipal and utility buildings.

Mr. Berger added, "Adjusted EBITDA of $35.6 million for the first six months was in line with our internal expectations. With our current backlog and the projection of additional projects that we will win and perform this year, we feel we are well positioned to meet our Adjusted EBITDA guidance for 2012."

Mr. Berger continued, "The last month has been very busy for us. Positive legislation was passed by Congress and signed into law by the President, bidding has been active in dredging and demolition and we announced we are building a new, world class hopper dredge. Great Lakes is well positioned to execute on our strategic plan of doubling the size of the Company in five years."

### 2012 Second Quarter Operating Results & Highlights

|  | Q2 2012 | Q2 2011 |
|---|---|---|
| Revenue | $166.5 million | $155.0 million |
| *Increase* | *7.4%* | |
| Gross Profit | $23.9 million | $19.8 million |
| Gross Profit Margin | 14.4% | 12.8% |
| Operating Income | $12.5 million | $8.7 million |
| *Increase* | *43.7%* | |
| Net Income attributable to Great Lakes | $4.4 million | $1.7 million |
| Per Diluted Share | $0.07 | $0.03 |
| Adjusted EBITDA | $20.9 million | $17.3 million |
| *Increase* | *20.8%* | |

28.     On November 6, 2012, Great Lakes issued a press release reporting on earnings for the third quarter of 2012.  The Press Release stated in pertinent part the following:

[Defendant Berger:] "After several strong quarters, the demolition segment's results were negatively impacted by cost overruns caused by weather and scope changes outside those allowed to be reimbursed under the contract. These impacts lowered the demolition gross margin by over 9% and were limited to the third quarter. On a positive note, the demolition segment was awarded a $3 million power plant project in North Carolina prior to quarter end and another $12 million industrial demolition project in Ohio in October. Management continues to focus

on large complex projects with higher margins, such as bridge, industrial, municipal and utility demolition and remediation."

Mr. William Steckel, Senior Vice President and Chief Financial Officer added, "Our management team is focused on delivering strong results in the upcoming fourth quarter. The third quarter reflects the negative impact of the shift of project execution into the fourth quarter. We have prepared our equipment and personnel for the project workload planned in the upcoming quarter. As planned, we have experienced a significant increase in our working capital, and corresponding decrease in our cash this year. Two projects with the most significant investment are Wheatstone and the Scofield coastal restoration. Collectively we have invested nearly $40 million in these important projects that we expect to be monetized in 2013. We have a strong focus going forward on working capital management and generating positive cash flow."

### 2012 Third Quarter Operating Results & Highlights

|  | Q3 2012 | Q3 2011 |
|---|---|---|
| Revenue | $166.8 million | $158.5 million |
| *Increase* | *5.2%* | |
| Gross Profit | $13.0 million | $27.4 million |
| Gross Profit Margin | 7.8% | 17.3% |
| Operating Income | $1.5 million | $14.8 million |
| *Decrease* | *89.9%* | |
| Net Income (loss) attributable to Great Lakes | $ (2.1) million | $5.6 million |
| Per Diluted Share | $ (0.04) | $0.09 |
| Adjusted EBITDA | $12.1 million | $26.0 million |
| *Decrease* | *53.5%* | |

### C.    The Truth Comes to Light

34.     On March 14, 2013, Great Lakes issued a press release announcing the

restatement of its financials in which the Company's previously-issued financial statements from

the Second and Third Quarter of fiscal 2012 should no longer be relied upon.  In addition, Great

Lakes admitted that it expected to conclude that the Company had a "material weakness in its

internal control over financial reporting," and that it would not be able to timely file its 2012

annual financial results with the SEC.

12

35.     On that same day, Great Lakes filed a Notification of Late Filing on Form 12B-25

with the SEC.  The Form 12B-25 provided in pertinent part the following:

Great Lakes Dredge & Dock Corporation (the "Company") is unable to timely file its Annual Report on Form 10-K for the year ended December 31, 2012 (the "Form 10-K") without unreasonable effort or expense due to the circumstances described below.

***During the preparation of its year-end financial statements, the Company identified instances in its demolition segment where revenue was recognized in a manner not consistent with the Company's accounting policy. The Company's policy regarding pending change orders is to immediately recognize the costs but defer the recognition of the related revenue until the recovery is probable and collectability is reasonably assured. Certain pending change orders where client acceptance has not been finalized were included as revenue. After a review, the Company concluded 2012 second and third quarter demolition segment revenues were overstated by $3.9 million and $4.3 million, respectively.*** Due to the time expended on this review, the Company now requires additional time to finalize the presentation and review of its financial statements and will be unable to meet the filing deadline for its Annual Report on Form 10-K.

***The Company has determined that there was a failure of internal controls to detect or prevent misstatements in the financial statements and that such misstatements are material to the Company's results of operations for the quarterly and year-to-date periods ended June 30, 2012 and September 30, 2012***, but not to any prior interim or annual period. Therefore, the Company will restate its condensed consolidated interim financial statements via the filing of amended Quarterly Reports on Form 10-Q for the periods ended June 30, 2012 and September 30, 2012 prior to filing its annual audited financial statements with the Form 10-K. These amended Quarterly Reports will reflect the conclusion regarding 2012 second and third quarter demolition segment revenues described above and will also include adjustments to dredging operating income to record $1.3 million and $0.9 million of expenses previously capitalized and incurred in the preparation of vessels for the Wheatstone Australia LNG project.

***Management's review and assessment of the Company's disclosure controls and procedures and management's evaluation of the Company's internal control over financial reporting, which is ongoing, has identified a material weakness. A "material weakness" is a deficiency, or a combination of significant deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis.***

Management is in the process of completing the year-end and restated interim financial statements and assessing matters relating to the effectiveness of the Company's internal control over financial reporting. Management is also in the process of determining the steps necessary to remediate any material weakness, and recommending to the Audit Committee of the Company's Board of Directors the corrective actions that the Company could take in connection with the remediation efforts.

36.     Contrary to Defendants' previous assurances regarding the reliability of the Company's internal control over financial reporting, the Company was forced to acknowledge that it had identified a "material weakness" in the procedures resulting in the overstatement of revenues by millions of dollars.  Accordingly, the Company announced that it would be required to restate its reported revenues for the second and third quarter of 2012.  On this news, Great Lakes's common stock plummeted from a close of $8.97 per share on March 14, 2013 to a $7.355 per share on March 15, 2013, a decline of 18% on unusually heavy trading volume.

## V.      NO SAFE HARBOR

38.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

39.     Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Great Lakes who knew that those statements were false when made.

## VI.     UNDISCLOSED ADVERSE INFORMATION

40.     The market for Great Lakes' securities was an open, well-developed and efficient

market at all relevant times. As a result of the materially false and misleading statements and failures to disclose described herein, Great Lakes securities traded at artificially inflated prices during the Class Period.

42.     Plaintiff and the other members of the Class purchased or otherwise acquired Great Lakes securities relying upon the integrity of the market price of Great Lakes' securities and market information related to Great Lakes, and have been damaged thereby.

43.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Great Lakes' securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Such statements and omissions were materially false and misleading in that they failed to disclose Great Lakes' fraudulent accounting scheme and weak internal controls.

44.     At all relevant times, the material misrepresentations and omissions particularized herein directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and misleading statements about Great Lakes' business, prospects and operations.

45.     These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Great Lakes and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

15

## VII.    SCIENTER ALLEGATIONS

46.    As alleged herein, Defendants acted with scienter in that he knew that the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

47.    As set forth herein, Defendant, by virtue of his receipt of information reflecting the true facts regarding Great Lakes, his control over, receipt and/or modification of Great Lakes allegedly materially misleading statements and omissions, and positions with the Company which made him privy to confidential information concerning Great Lakes, participated in the fraudulent scheme alleged herein.

48.    The ongoing fraudulent scheme described herein could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

## VIII.    LOSS CAUSATION

49.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Great Lakes' securities and operated as a fraud or deceit on Class Period purchasers of Great Lakes' securities by failing to disclose to investors that the Company's financial results were materially misleading and misrepresented material information.  When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Great Lakes' securities fell as the prior inflation came out of the Company's stock price.  As a result of their

16

purchases of Great Lakes securities during the Class Period, Plaintiff and the other Class members suffered economic loss.

50.     By failing to disclose the true state of the Company's business prospects and growth strategy, investors were not aware of the true state of the Company's financial status. Therefore, Defendants presented a misleading picture of Great Lakes' business and prospects. Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, Defendants caused Great Lakes to conceal the truth.

51.     The decline in the price of Great Lakes common stock after the truth came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Great Lakes' common stock price decline negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of Great Lakes' securities and the subsequent decline in the value of Great Lakes' securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## IX.     APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

52.     At all relevant times, the market for Great Lakes stock was an efficient market for the following reasons, among others:

> a.   Great Lakes securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient market;

17

b. As a regulated issuer, Great Lakes filed periodic public reports with the SEC and the NASDAQ;

c. Great Lakes securities were followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace; and

d. Great Lakes regularly issued press releases which were carried by national newswires. Each of these releases was publicly available and entered the public marketplace.

53. As a result, the market for Great Lakes securities promptly digested current information with respect to the Company from all publicly-available sources and reflected such information in Great Lakes' stock price. Under these circumstances, all purchasers of Great Lakes securities during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

## X.    CLASS ACTION ALLEGATIONS

54. Plaintiff bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons who purchased or otherwise acquired Great Lakes securities during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Great Lakes and members of their immediate families, any subsidiary or affiliate of Great Lakes, employees of the Company or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

55. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the Class located throughout the United States. Throughout the Class Period, Great Lakes securities were actively traded on the NASDAQ, an open and efficient market, under the ticker symbol "GLDD". As of March 19, 2013, the Company had approximately 60 million shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Great Lakes and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

56. Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57. Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

58. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a. whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

b. whether Defendants participated in and pursued the common course of conduct complained of herein;

c.      whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, financial condition and prospects of Great Lakes;

d.      whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance and prospects of Great Lakes;

e.      whether the market price of Great Lakes common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f.      the extent to which the members of the Class have sustained damages and the proper measure of damages.

59.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

## COUNT I
**For Violations Of §10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against All Defendants**

60.      Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

61.      During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Great Lakes common stock; and (iii) cause Plaintiff and other members of the Class to purchase Great Lakes stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Defendants took the actions set forth herein.

62. These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Great Lakes securities in violation of §10(b) of the Exchange Act and Rule 10b-5. Defendants are sued as primary participants in the wrongful and illegal conduct charged herein. Individual Defendants are also sued herein as controlling persons of Great Lakes, as alleged herein.

63. In addition to the duties of full disclosure imposed on Defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S X (17 C.F.R. § 210.01 et seq.) and S-K (17 C.F.R. § 229.10 et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

64.     Great Lakes and the Individual Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations and future prospects of Great Lakes as specified herein.  These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Great Lakes' value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Great Lakes and its business, operations and future prospects, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Great Lakes' securities during the Class Period.

65.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of his responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's operational and financial projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and

performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

66.     These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Great Lakes' operating condition, business practices and future business prospects from the investing public and supporting the artificially inflated price of its stock.  As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

67.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Great Lakes securities was artificially inflated during the Class Period.  In ignorance of the fact that the market price of Great Lakes shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other members of the Class acquired Great

Lakes securities during the Class Period at artificially inflated high prices and were damaged thereby.

68.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Great Lakes, which were not disclosed by the Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Great Lakes securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

69.     By virtue of the foregoing, Great Lakes and Individual Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

70.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

<u>**COUNT II**</u>
**For Violations of §20(a) of the Exchange Act**
**Against the Individual Defendants**

71.     Plaintiff repeats and realleges the allegations set forth above paragraphs as if set forth fully herein.  This claim is asserted against the Individual Defendants.

72.     The Individual Defendants were and acted as controlling person of Great Lakes within the meaning of §20(a) of the Exchange Act as alleged herein.  By virtue of their high level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, Individual Defendants had the

power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

73.    In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

74.    As set forth above, Great Lakes and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their controlling position, Individual Defendants are liable pursuant to §20(a) of the Exchange Act. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## IV.    <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff, on behalf of himself and the Class, pray for judgment as follows:

a)    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

b)      Awarding Plaintiff and the other members of the Class damages in an amount
which may be proven at trial, together with interest thereon;

c)      Awarding Plaintiff and the members of the Class pre-judgment and post-judgment
interest, as well as their reasonable attorneys' and experts' witness fees and other
costs; and

d)      Awarding such other relief as this Court deems appropriate.

## V.    <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated: March 19, 2013                    Respectfully submitted,


                                         **Lasky & Rifkind, Ltd**.

                                         By:___/s/ Norman Rifkind___
                                         Norman Rifkind
                                         Amelia S. Newton
                                         351 West Hubbard Street, Suite 401
                                         Chicago, IL  60654
                                         Tel: (312) 634-0057
                                         Fax: (312) 634-0059


                                         **SAXENA WHITE P.A.**

                                         Maya Saxena
                                         Joseph E. White III
                                         Lester R. Hooker
                                         Brandon T. Grzandziel
                                         2424 North Federal Highway, Suite 257
                                         Boca Raton, FL 33431
                                         Tel:  (561) 394-3399
                                         Fax:  (561) 394-3382

## Certification and Authorization of Lead Plaintiff

I, Roy Barnes, on behalf of the United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 ("Local No. 8"), certify that:

1. As General Counsel of Local No. 8, I am authorized by Local No. 8 to initiate litigation on Local No. 8's behalf and to execute this Certification.

2. I have reviewed a complaint and I authorize Saxena White P.A. to act on Local No. 8's behalf in this matter in filing a complaint, applying for Lead Plaintiff status and for all other purposes in connection with this litigation.

3. Local No. 8 did not acquire the security that is the subject of this action at the direction of counsel or in order to participate in this private action or any other litigation under the federal securities laws.

4. Local No. 8 is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Neither I nor Local No. 8 will accept any payment for serving as a representative party on behalf of the class beyond the purchaser's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Local 8 has made no transaction(s) during the Class Period in the securities that are the subject of this action except those set forth below:

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 1/17/13 | 983 | $9.66 |
| Purchase | 1/17/13 | 797 | $9.66 |

7. During the three years prior to the date of this Certification, Local 8 has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except if detailed below:

**None**

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate.

Date: March 19, 2013

By: _____
Roy Barnes, General Counsel