**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

IN RE GREAT LAKES DREDGE & DOCK
CORPORATION SECURITIES LITIGATION

CASE NO. 1:13-CV-02115

Honorable Charles R. Norgle, Sr.

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

III.   PRELIMINARY CLASS CERTIFICATION IS APPROPRIATE AND
NECESSARY FOR SETTLEMENT PURPOSES ................................................ 3

    A.    The Requirements Of Rule 23(a) Are Met ............................................... 4

         1.    The Proposed Class Is Sufficiently Numerous ............................. 4

         2.    Questions Of Law And Fact Are Common To The Class ........................ 4

         3.    Lead Plaintiff's Claims Are Typical Of The Class' Claims ...................... 5

         4.    Lead Plaintiff Will Fairly And Adequately Protect the Class'
Interests ................................................................................. 5

    B.    The Requirements Of Rule 23(b)(3) Are Met ......................................... 6

         1.    Common Questions Of Law And Fact Predominate ................... 6

         2.    A Class Action Is The Superior Method Of Adjudication ........................ 7

IV.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
APPROVED ................................................................................................ 8

V.    THE PROPOSED NOTICE FAIRLY APPRISES THE SETTLEMENT CLASS
MEMBERS OF THE SETTLEMENT ............................................................... 13

VI.   PROPOSED SCHEDULE OF EVENTS .......................................................... 14

VII.  CONCLUSION ................................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

## *Cases*

*Abrams v. Van Kampen Funds, Inc.*,
2002 WL 1989401 (N.D. Ill. Aug. 27, 2002) ............................................................ 4

*Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*,
630 F.2d 1164 (7th Cir. 1980) ....................................................................... 8

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ....................................................................... 3, 6, 13

*American Intern. Group, Inc. v. ACE INA Holdings, Inc*,
2011 WL 3290302 (N.D. Ill. July 26, 2011) ....................................................... 9, 12

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ....................................................................... 8

*Boggess v. Hogan*,
410 F. Supp. 433 (N.D. Ill. 1975) ................................................................... 9

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ......................................................................... 9

*Dexter v. Ministry Health Care*,
2015 WL 1326361 (W.D. Wis. Mar. 25, 2015) ....................................................... 3

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ................................................................................. 3

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ................................................................... 13

*In re NeoPharm, Inc. Sec. Litig.*,
225 F.R.D. 563 (N.D. Ill. 2004) ................................................................... 4

*In re Sys. Software Assocs., Inc. Sec. Litig.*,
2000 U.S. Dist. LEXIS 18285 (N.D. Ill. Dec. 8, 2000) ........................................... 4, 5

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ..................................................................... 8, 9

*McCue v. MB Fin., Inc.*,
2015 WL 1020348 (N.D. Ill. Mar. 6, 2015) ....................................................... 3, 4, 9

*Patterson v. Stovall*,
528 F.2d 108 (7th Cir. 1976) ..................................................................... 11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ........................................................................ 7

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ........................................................ 4

*Silverman v. Motorola, Inc.*,
   259 F.R.D. 163 (N.D. Ill. 2009) ..................................................... 5

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) .......................................................... 9

*Wilkins v. Just Energy Group, Inc.*,
   2015 WL 1234738 (N.D. Ill. Mar. 13, 2015) ................................. 7

### Statutes

15 U.S.C. § 78u-4(a)(7) ...................................................................... 13

15 U.S.C. §77z-1(b)(1) ....................................................................... 12

28 U.S.C. § 1715 ................................................................................ 15

### Rules

Fed. R. Civ. P. 23(a) .................................................................. passim

Fed. R. Civ. P. 23(b) .................................................................. 3, 6, 7

Fed. R. Civ. P. 23(e) ............................................................................ 13

### Other Authorities

1 Newberg & Conte, NEWBERG ON CLASS ACTIONS §3.25 at 3-319 ................................... 6

Manual for Complex Litigation §21.632 .......................................... 9

iii

Lead Plaintiff United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 ("Local No. 8"), on behalf of itself and all other purchasers of common stock of Great Lakes Dock & Dredge Corporation ("GLDD") between and including August 7, 2012 and August 7, 2013 (the "Settlement Class Period"), respectfully submits this Memorandum of Law in Support of its Unopposed Motion for Preliminary Approval of Settlement.

## I.   INTRODUCTION

Lead Plaintiff and Defendants[1] have negotiated, at arms' length, a proposed Settlement of all claims brought on behalf of all persons and entities who purchased or otherwise acquired GLDD common stock during the Settlement Class Period (the "Class"). Lead Plaintiff is informed of the strengths and weaknesses of the Action, having engaged in extensive investigation of its claims prior to and during the prosecution of the Action and consulting experts regarding the proposed Settlement. Lead Plaintiff appreciates the complex and uncertain nature of trying the Action before a jury and difficulties of proof associated with, and possible defenses to, the securities law violations asserted in the Action. Additionally, even if the Class were to prevail at trial, Defendants could appeal any favorable judgment, delaying and possibly jeopardizing any recovery.

As such, Lead Plaintiff fully endorses and respectfully recommends the proposed Settlement and believes it is in the best interest of the Class. The Parties have reached an agreement to settle this class action against Defendants for payment of $1,955,000, an excellent recovery for the Class. The terms of the Settlement are set forth in the executed Stipulation of Settlement dated May 26, 2015 (the "Stipulation").[2] The Stipulation includes several exhibits:

---

[1] Great Lakes Dredge & Dock Corporation, Jonathan W. Berger, William S. Steckel, and Bruce J. Biemeck are referred to collectively as "Defendants."

[2] Capitalized terms not defined herein shall have the same meanings as given in the Stipulation.

1

- Exhibit A, the Order Preliminarily Approving Settlement, Certifying Settlement Class and Providing for Notice of Settlement ("Preliminary Order");

- Exhibit A-1, Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing (the "Notice");

- Exhibit A-2, Proof of Claim and Release Form ("Proof of Claim");

- Exhibit A-3, Summary Notice of Pendency of Class Action and Proposed Settlement, Certification of Settlement Class, Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Summary Notice"); and

- Exhibit B, the Order and Final Judgment Approving Settlement and Dismissing the Action with Prejudice ("Order and Final Judgment").

Lead Plaintiff seeks entry of the proposed Preliminary Order, which (1) certifies the Class for Settlement purposes only; (2) preliminarily approves the proposed Settlement, including the Plan of Allocation; (3) approves the form and manner of giving notice of the proposed Settlement to the Class by means of the Notice and Summary Notice; and (4) sets a hearing date for final approval of the Settlement ("Fairness Hearing"), along with a schedule for various deadlines relevant to the Fairness Hearing. These deadlines include mailing the Notice and publishing the Summary Notice, the submission of all objections or requests for exclusion, and the submission of Proofs of Claim. The proposed Settlement is an excellent result for the Class. It is exceedingly fair, reasonable and adequate and thus should be approved by the Court.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Local No. 8 filed the original purported securities fraud class action against GLDD and certain officers and directors of the company on March 19, 2013 alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. ECF No. 1. On June 10, 2013, the Court appointed the Lead Plaintiff and approved Lead Plaintiff's selection of Saxena White as Lead Counsel and Lasky & Rifkin, LTD to serve as Liaison Counsel. ECF No. 30. On August 9, 2013, Lead Plaintiff filed its

Amended Class Action Complaint.  ECF No. 32.  Defendants moved to dismiss the complaint on October 8, 2013.  ECF No. 36.  On September 24, 2014, after hearing oral argument, the Court entered an Order denying Defendants' motion to dismiss.  ECF No. 51.  Defendants motioned for reconsideration.  ECF No. 49.  After granting Defendants' request for reconsideration, the Court again denied Defendants' motion to dismiss the complaint.  ECF No. 55.

Counsel for Lead Plaintiff and for Defendants participated in a mediation session with JAMS mediator Hon. William J. Cahill (Ret.) on November 11, 2014.  Each side submitted comprehensive mediation statements, and, as a result of good faith negotiations that occurred during and after the mediation, the Parties reached an agreement on the settlement terms set forth in the Stipulation.

## III.    PRELIMINARY CLASS CERTIFICATION IS APPROPRIATE AND NECESSARY FOR SETTLEMENT PURPOSES

One of the Court's duties in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Fed. R. Civ. P. 23.  *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).  Courts often provisionally certify the class along with preliminary approval of the settlement.  *See Dexter v. Ministry Health Care,* 2015 WL 1326361, at **4-5 (W.D. Wis. Mar. 25, 2015).  Following negotiations, the Parties have agreed to a Settlement, and seek preliminary class certification for settlement purposes only.

For the Court to certify a class under Fed. R. Civ. P. 23(a), the Court must find that the requirements of numerosity, commonality, typicality and adequacy of representation are met. *McCue v. MB Fin., Inc.*, 2015 WL 1020348, at *2-3 (N.D. Ill. Mar. 6, 2015).  The action must also meet one of the prerequisites of Rule 23(b).  *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156,

163 (1974). Since the Parties agree "to a Settlement Class [] for settlement purposes only" (*See* Stipulation ¶11.1), the Court need only address certification under Rule 23(a) briefly.[3]

### A.     The Requirements Of Rule 23(a) Are Met

#### 1.     The Proposed Class Is Sufficiently Numerous

Rule 23(a) requires the plaintiff to demonstrate that the class is so numerous that joinder of all members is impracticable. During the Class Period, there were millions of shares of GLDD shares sold and/or traded on the NASDAQ. "[I]n securities fraud suits involving nationally traded securities, numerosity may be assumed." *In re Sys. Software Assocs., Inc. Sec. Litig.*, 2000 U.S. Dist. LEXIS 18285, at *5 (N.D. Ill. Dec. 8, 2000).[4] Thus, numerosity has been met.

#### 2.     Questions Of Law And Fact Are Common To The Class

A class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement…" *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "Rule 23(a)(2) commonality is not a demanding requirement; one issue of fact or law common to all class members will suffice." *Abrams v. Van Kampen Funds, Inc.*, 2002 WL 1989401, at *3 (N.D. Ill. Aug. 27, 2002).

Here, the issues common to the Class include, but are not limited to: (i) whether Defendants engaged in acts or conduct in violation of the securities laws; (ii) whether GLDD's public reports and disclosures contained false and misleading statements regarding GLDD's financial and operational results; and (iii) the extent of injuries sustained by Class Members

---

[3] The fact the Parties "reached a settlement is a relevant consideration in the class-certification analysis." *McCue*, 2015 WL 1020348, at *1.

[4] S*ee also In re NeoPharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 565 (N.D. Ill. 2004) (certifying class where company had 16 million shares traded on NASDAQ such that it could be "reasonably inferred that hundreds, if not thousands, of persons would be included in the proposed class").

during the Class Period.  Given that these legal issues are shared by Lead Plaintiff and Class Members and are based on a common core of salient facts, the commonality requirement is met.

### 3.    Lead Plaintiff's Claims Are Typical Of The Class' Claims

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). Here, Lead Plaintiff's claims against Defendants are typical because the alleged damages arise from the same course of misconduct—GLDD common stock was allegedly inflated because Defendants, in violation of the federal securities laws, allegedly issued materially false and misleading statements during the Class Period.  Lead Plaintiff's claims are "typical" because they are based on the same legal theory as that of the other Class Members.  *See Software Assocs.,* 2000 U.S. Dist. LEXIS 18285, at **5-6 (granting class certification where plaintiff's claims arose from the same "course of action that g[ave] rise to the claims of other class members and . . . [we]re based on the same legal theory").  Therefore, Lead Plaintiff's interests in the Action are representative of the interests of the Class.

### 4.    Lead Plaintiff Will Fairly And Adequately Protect the Class' Interests

The adequacy requirement pursuant to Rule 23(a)(4) is met here because Lead Plaintiff will fairly and adequately protect the interests of the Class.  Three criteria are used to determine adequacy: (i) whether the claims of the class representatives and other members of the class are not antagonistic; (ii) whether the class representatives have a sufficient interest in the outcome of the case; and (iii) whether the plaintiff's counsel is experienced and competent.  *Silverman v. Motorola, Inc.,* 259 F.R.D. 163, 173 (N.D. Ill. 2009).

Lead Plaintiff in this case satisfies all three factors.  First, Lead Plaintiff is well-suited to serve as Class Representatives for settlement purposes because its interests do not conflict with any members of the Class.  A party's interests will only be deemed antagonistic to those of the

5

rest of the class if the conflict is fundamental—going to the specific issues in controversy. 1 Newberg & Conte, NEWBERG ON CLASS ACTIONS §3.25 at 3-319 to 141; §3.26 at 3-143 to 144 (3d ed. 1992). Given that Lead Plaintiff's claims are identical to that of the other Class Members and subject to no unique defenses, there is no question of the lack of conflict of interests. Second, Lead Plaintiff acquired and held GLDD common stock during the Class Period and suffered substantial losses as a result. Because of this, Lead Plaintiff has a sufficient interest in the outcome of this case. Third, Lead Counsel has demonstrated that they are qualified, experienced, and fully prepared to represent the Settlement Class. Lead Counsel has expertise in complex securities litigation throughout the United States and has demonstrated its excellent ability to conduct this Action through drafting a detailed amended complaint, defeating Defendants' motion to dismiss, consulting with experts, and negotiating the Settlement.

Lead Plaintiff and the Class share the common goal of maximizing recovery and there is no conflict between them; therefore the adequacy requirement is also met. Thus, the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy are easily met in the Action.

**B.      The Requirements Of Rule 23(b)(3) Are Met**

In addition to satisfying the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the three alternative requirements of Rule 23(b). Pursuant to Rule 23(b)(3), the Court must consider: (1) whether issues of law or fact common to class members predominate over questions affecting only individual members; and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Certification of the Action under Rule 23(b)(3) is proper.

**1.      Common Questions Of Law And Fact Predominate**

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594. Certification

under Fed.R.Civ.P. 23(b)(3) is appropriate when "the questions of law or fact common to class members predominate over any questions affecting only individual members." *Wilkins v. Just Energy Group, Inc.*, 2015 WL 1234738, at *10 (N.D. Ill. Mar. 13, 2015). Lead Plaintiff submits that there are no significant individual issues in this case and that a common nucleus of facts and law dominate the Action. Where, as here, Settlement Class Members are subject to the same alleged misrepresentations and omissions, and such alleged misrepresentations were part of a common course of conduct, common questions predominate.

### 2. A Class Action Is The Superior Method Of Adjudication

The class action device is the superior method for resolving the claims in this Action. Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by violations of the securities laws. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that "[m]ost of the plaintiffs would have no realistic day in court if a class action were not available"). The following four factors are pertinent: "(A) the class members' interests in individually controlling the prosecution…of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by…class members; (C) the desirability…of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Wilkins*, 2015 WL 1234738, at *18(citing Fed. R. Civ. P. 23(b)(3)).

Considering these factors, a fair examination can only result in the conclusion that a class action is the preferred procedure here. Lead Plaintiff is unaware of any other litigation already commenced by individual Class Members. Moreover, it is clearly desirable to concentrate the claims of all Class Members in this forum, and Lead Plaintiff does not foresee any difficulties in

7

the management and settlement of this action as a class action. The alternative to certifying the class for settlement purposes would be to unleash hundreds, if not thousands, of individual actions into the judicial system which could result in varying adjudications of liability, or risk that many Class Members would be unable to seek redress because they could not afford to proceed on an individual basis. In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied and thus, the Court should certify this Class for settlement purposes.

## IV.  THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

In determining whether to approve the Settlement, the Court should be guided by the strong judicial policy "favor[ing] the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citations omitted).[5] "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980) (citations omitted).

Courts generally follow a two-step process in determining whether to approve a proposed settlement. The first step is for the Court to review the terms of the settlement and make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms. *See Manual for Complex Litigation* ("MCL") §21.632. Unless this preliminary evaluation discloses reasons to doubt the fairness of the Settlement or other obvious deficiencies, the Court

---

[5] S*ee also Airline Stewards & Stewardesses Ass'n Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980) ("Federal Courts look with great favor upon the voluntary resolution of litigation through settlement . . . .This rule has particular force regarding class action lawsuits.") (citations omitted).

should grant the motion for preliminary approval, direct notice of the settlement terms, and set the date of the Fairness Hearing.[6]  *See* MCL §21.632, n.976.

Here, the Court should preliminarily approve the Parties' Settlement.  There is a strong policy in favor of encouraging settlements in this Circuit.  *Isby*, 75 F.3d at 1196.  While the Parties still must show that the Settlement is reasonable under Rule 23, the question with respect to preliminary approval is whether the proposed settlement is "within the range of possible approval."  *McCue*, 2015 WL 1020348, at *1.  Lead Plaintiff respectfully submits that the Settlement easily meets the standard for preliminary approval.  Moreover, preliminary examination of the criteria for final approval supports this conclusion.[7]

Here, the proposed Settlement of $1.955 million represents an excellent result for the Class and is the result of extensive arms' length negotiation between the Parties, arrived at after months of discussions among counsel, including mediation before Judge Cahill, a well-respected mediator with significant experience in mediating complex litigation, including securities class actions.[8]  Prior to the mediation, the parties drafted detailed mediation statements, which cited to supporting documents, were provided to Judge Cahill and exchanged among the parties.  The

---

[6] At preliminary approval, the court's role is not "resolving the merits of the controversy or making a precise determination of the parties' respective legal rights."  *McCue,* 2015 WL 1020348, at *1 (N.D. Ill. Mar. 6, 2015) (citation omitted).

[7] The Seventh Circuit employs the following factors when considering whether a settlement is "fair, reasonable, and adequate": (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed.  *American Intern. Group, Inc. v. ACE INA Holdings, Inc*, 2011 WL 3290302, at *5 (N.D. Ill. July 26, 2011) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006)).

[8] *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[M]ediator's involvement in …settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

mediation statements detailed the parties' respective positions, including the strengths and weaknesses of Plaintiff's claims and Defendants' defenses.

At the mediation, these strengths and weaknesses were fully explored. As a result of discussions and negotiations led by Judge Cahill, the parties reached an agreement-in-principle to resolve the Action. Even with an agreement on settlement amount, the discussions did not end, with multiple discussions between the parties in regards to the Stipulation. Thus, the Settlement is the result of extensive and informed arms' length negotiations and is not the product of fraud, collusion or abandonment of the interests of the Class. Under these circumstances, the time and efforts by the parties are persuasive indicators that the Settlement was not the result of collusion, but rather good faith negotiations conducted at arms' length.

Furthermore, the $1.955 million Settlement represents a recovery of approximately 15.16% of maximum provable damages for the Class. Lead Plaintiff respectfully submits that this is an excellent result that further supports the fairness, reasonableness and adequacy of the Settlement, especially given Lead Plaintiff's significant hurdles in the prosecution of the Action.[9]

If this case were tried rather than settled, the Parties would have to engage in an extensive, and time-consuming discovery program. In the event that a settlement was not reached, depositions would need to be taken, including of all the Defendants and of third parties, including former employees. The Class would have to dedicate significant resources to the completion of fact discovery, with no guarantee that useful testimony would have been procured.

---

[9] The Settlement is well within the range of recoveries in comparable securities fraud class actions. *See* Dr. Renzo Comolli and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review, at 32 (NERA Economic Consulting 2015) (median settlement as a percentage of estimated damages where damages were between $20 and $49 million was 8.8% from January 1996-December 2014), available at http://www.nera.com/content/dam/nera/publications/2015/PUB_2014_Trends_0115.pdf (last accessed April 23, 2015).

In addition, the parties would have to conduct expert discovery, involving both the preparation of experts' reports and the depositions of the various experts. Assuming that Lead Plaintiff's claims survived Defendants' inevitable summary judgment motion, trial preparation would result in many additional hours of effort, at great additional expense. Trial of liability issues alone would run several weeks and involve numerous attorneys, experts, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the expenditure of enormous amounts of judicial and financial resources. Even if Lead Plaintiff could recover a larger judgment after trial, the additional delay, through trial, post-trial motions, and the appellate process, could last for years. Given the time value of money, a future recovery, even one in excess of the Settlement, might be less valuable to the Settlement Class than the current benefits of this Settlement.

Moreover, courts recognize that the opinion of experienced counsel supporting settlement is entitled to considerable weight. *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976). Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. Lead Counsel has been an integral part of many settlements of this nature and in their estimation; this settlement is an excellent result because it provides the Settlement Class with genuine relief under difficult legal circumstances. It is Lead Counsel's informed opinion that given the risks and uncertainties inherent in complex securities class action litigation, the proposed settlement is fair, reasonable and adequate and in the best interest of the Settlement Class.

Counsel for Defendants similarly have extensive expertise from a long track record in securities class actions and have vigorously defended Defendants throughout the course of the Litigation. Given that the Parties are represented by well-respected counsel experienced in

11

securities class action litigation who have vigorously litigated the action, this factor supports preliminary approval of the Settlement.

Lead Plaintiff has vigorously litigated this case and Lead Counsel has conducted an extensive investigation of Lead Plaintiff's claims. Due to the automatic stay imposed by the PSLRA pending the resolution of Defendants' motions to dismiss, no formal discovery was commenced prior to the Court's order denying Defendants' motion to dismiss. *See* 15 U.S.C. §77z-1(b)(1) (PSLRA's automatic stay of discovery).[10] Lead Plaintiff had, however, undertaken a significant investigation which included: (i) an extensive review of the Company's SEC filings, press releases, and other publicly available information; (ii) obtaining information from former employees with knowledge of the alleged wrongdoing; (iii) and preparing for mediation.

The Parties exchanged extensive briefs during the motion to dismiss stage and were at the precipice of formal discovery and class certification briefing when the Settlement was negotiated. In advance of the mediation, Defendants included exhibits to their mediation statement referencing confidential documents and relevant testimony, which Lead Counsel reviewed and analyzed. This extensive information enabled Lead Plaintiff to make an informed assessment of the merits of its claims and the Settlement, favoring preliminary approval.[11]

---

[10] Lead Plaintiff was ready to fully commence discovery, pursuant to the joint stipulation to a schedule and discovery plan, approved by the Court on November 5, 2014 (ECF Nos. 56, 57). However, in the interest of judicial economy and allowing the Class to receive a concrete benefit now, not a hypothetical benefit after years of costly, uncertain litigation and far-from-guaranteed jury verdict, Lead Plaintiff engaged in mediation with Defendants on November 11, 2014.

[11] *See American Intern. Group, Inc.*, 2011 WL 3290302, at *3 ("[T]he standard under this factor is not whether it is conceivable that more discovery could possibly be conducted. Rather, courts have preliminarily approved settlements where there was merely, for example, a significant amount of informal discovery") (internal quotes omitted).

## V.  THE PROPOSED NOTICE FAIRLY APPRISES THE SETTLEMENT CLASS MEMBERS OF THE SETTLEMENT

Rule 23(e) specifies that a class action cannot be settled without the court's approval, and that notice of the proposed compromise must be given to all class members in such manner as the court directs.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 620-21 (U.S. 1997).  Due process requires that Class Members be apprised of their rights with respect to the proposed Settlement, be provided with enough information to make an informed decision and be afforded a full and fair opportunity to participate in the proceedings to determine whether the proposed Settlement should be given final approval.[12]

The Parties have negotiated the form of the Notice and the Summary Notice to notify the Settlement Class of the terms of the Settlement and the Settlement Class Members' rights in connection with the Settlement.  The Notice, which will be mailed to Settlement Class Members, has been carefully drafted to comply with the provisions of the Private Securities Litigation Reform Act of 1995.  *See* 15 U.S.C. § 78u-4(a)(7).  Settlement Class Members will also receive a Proof of Claim form to provide the purchase and sale information for their GLDD common stock.  Settlement Class Members who wish to share in the Settlement proceeds will complete and mail their Proof of Claim forms to Epiq Systems, the Claims Administrator retained by Lead Counsel to administer the claims process in this Settlement.

The Parties have agreed to use notification by mail and by publication in an investor-oriented publication with national coverage.  Upon entry of the Preliminary Order, the Administrator will mail the Notice and the Proof of Claim forms to Settlement Class Members

---

[12] *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010) ("The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing.").

13

identified from stock transfer records provided by Defendants.[13]  Lead Counsel will cause the Summary Notice to be published in *Investor's Business Daily* and posted on *Business Wire*. Notice by mail to class members who can reasonably be identified and by publication satisfies the requirements of due process in this type of litigation.

Upon notification of the Settlement, members of the Settlement Class may: (1) approve the Settlement and share in the Settlement proceeds by submitting a Proof of Claim; (2) exclude themselves from the Settlement by opting out of the Settlement Class, in which case they will not participate in the Settlement recovery and will retain their individual claims against Defendants; or (3) object to the Settlement, the Plan of Allocation and/or the application for attorneys' fees and expenses by objecting to their terms.  Members of the Settlement Class must submit their Proofs of Claim within the time specified in the Preliminary Order.  Members who wish to exclude themselves from the Settlement must submit a timely request for exclusion.  Members who wish to object to the Settlement must serve a notice of objection and, if applicable a notice of their intention to appear at the Fairness Hearing and object.  If they choose, objectors may submit a memorandum of law in opposition to the Settlement and can appear before the Court at the Fairness Hearing.  Therefore, Lead Plaintiff respectfully submits that this Court should find that the Notice and the procedures for its dissemination are reasonably calculated to provide notice of the Settlement to the Settlement Class.

## VI.    PROPOSED SCHEDULE OF EVENTS

In connection with the Preliminary Approval Order, the Parties request that the Court establish dates by which notice of the Settlement will be distributed to Settlement Class

---

[13]   The Preliminary Order provides that nominees who purchased GLDD common stock on behalf of beneficial owners shall send the Notice and Proofs of Claim to those beneficial owners upon the receipt of such documents.  (Prelim. Order ¶ 8.)  This provision ensures that brokers or other entities that purchased GLDD common stock for others will forward the documents to the beneficial owners, who are the appropriate signatories to the Proof of Claim forms.

Members, dates by which shareholders may comment on the Settlement and a date on which the Court will hold a Fairness Hearing to consider final settlement approval. Lead Counsel respectfully submits the following schedule of deadlines for the proposed Preliminary Order:

| Event | Proposed Deadline |
|---|---|
| Mailing of Notice<br>*See* Preliminary Order ¶8 | 21 days after entry of Preliminary Order |
| Publication of Summary Notice<br>*See* Preliminary Order ¶9 | 21 days after entry of Preliminary Order |
| Submission of Requests for Exclusion<br>*See* Preliminary Order ¶13 | 30 days prior to the Fairness Hearing |
| Submission of Motion for Final Approval of Settlement and Attorneys' Fees and Expenses<br>*See* Preliminary Order ¶19 | 21 days prior to the Fairness Hearing |
| Submission of Objections<br>*See* Preliminary Order ¶15 | 14 days prior to the Fairness Hearing |
| Submission of Reply in Support of Final Approval and Attorney's Fees and Expenses<br>*See* Preliminary Order ¶19 | 7 days prior to the Fairness Hearing |
| Fairness Hearing<br>*See* Preliminary Order ¶5 | As convenient for the Court, but not earlier than 100 days after the filing of this Motion[14] |
| Submission of Proofs of Claims<br>*See* Preliminary Order ¶12(a) | 90 days after Publication of Summary Notice |

## VII. CONCLUSION

For all of the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Order granting: (i) preliminary approval of the Settlement; (ii) provisional certification of the Class for purposes of the Settlement; (iii) provisional appointment of Lead Plaintiff as Class Representatives and Saxena White P.A. as Class Counsel; (iv) approval of the form and manner of giving notice of the proposed Settlement to the Class; and (v) a time and date for the Fairness Hearing to consider final approval of the Settlement and related matters.

---

[14] 28 U.S.C. § 1715 requires Defendants to notify certain federal and state officials of the proposed Settlement within 10 days from the date of filing this Motion. Subsection (d) requires the Court to wait 90 days from the date these officials are served to give final approval to the proposed Settlement. In order to comply with the statute, Lead Counsel respectfully requests that the Court schedule the Fairness Hearing to occur at least 100 days from the date of this filing, subject to the Court's convenience.

Dated: June 2, 2015                                Respectfully submitted,

                                                   **LASKY & RIFKIND, LTD.**

                                                   By: *_/s/ Norman Rifkind_*

                                                   Norman Rifkind
                                                   Amelia S. Newton
                                                   351 West Hubbard Street, Suite 401
                                                   Chicago, IL 60654
                                                   Tel:  (312) 634-0057
                                                   Fax:  (312)634-0059

                                                   *Liaison Counsel for Lead Plaintiff*

                                                   **SAXENA WHITE P.A.**
                                                   Maya Saxena
                                                   Joseph E. White III
                                                   Lester R. Hooker
                                                   Brandon T. Grzandziel
                                                   5200 Town Center Circle, Suite 601
                                                   Boca Raton, FL 33486
                                                   Tel:  (561) 394-3399
                                                   Fax:  (561) 394-3082

                                                   *Lead Counsel for Lead Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 2nd day of June, 2015, I presented the foregoing to the

Clerk of the Court for filing and uploading to the CM/ECF system.


<u>*/s/ Norman Rifkind*</u>
Norman Rifkind