**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE GREAT LAKES DREDGE & DOCK CORPORATION SECURITIES LITIGATION | CASE NO. 1:13-CV-02115 Honorable Charles R. Norgle, Sr. |

**LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT,**
**CLASS CERTIFICATION, AND APPROVAL OF PLAN OF ALLOCATION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I. PRELIMINARY STATEMENT .................................................................................1

II. BACKGROUND OF THE LITIGATION AND SETTLEMENT ....................................2

III. THE SETTLEMENT MEETS THE SEVENTH CIRCUIT STANDARDS FOR APPROVAL ...........................................................................................................3

    A. The Strength of Lead Plaintiff's Case Compared to the Amount of the Settlement ................................................................................................5

    B. Defendants' Ability to Pay Supports Approval of the Settlement ...........................6

    C. The Complexity, Length and Expense of Further Litigation Supports Approval of the Settlement .....................................................................7

    D. The Lack of Any Opposition to the Settlement and Plan of Allocation Strongly Supports Final Approval ...........................................................9

    E. The Settlement Is the Product of Good Faith, Arm's-Length Negotiations With The Assistance Of An Experienced Mediator .................................9

    F. Lead Counsel Strongly Endorses the Settlement ....................................................10

    G. The Stage of the Proceedings and the Amount of Discovery Completed.............11

IV. CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED .......................................................................................................12

V. THE FORM AND METHOD OF NOTICE WERE ADEQUATE..................................13

VI. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...................................14

VII. CONCLUSION......................................................................................................15

# TABLE OF AUTHORITIES

## *Cases*

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  2012 WL 651727(N.D. Ill. Feb. 28, 2012) ............................................................................10

*Anderson v. Torrington Co.*,
  755 F. Supp. 834 (N.D. Ind. 1991) ........................................................................................4

*Armstrong v. Bd. of Sch. Dirs.*,
  616 F.2d 305 (7th Cir. 1980) ............................................................................................4, 5

*Beecher v. Able*,
  575 F.2d 1010 (2d Cir. 1978)...............................................................................................14

*EEOC v. Hiram Walker & Sons, Inc.*,
  768 F.2d 884 (7th Cir. 1985) .............................................................................................3, 4

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) .................................................................................................4

*GE Capital Corp. v. Lease Resolution Corp.*,
  128 F.3d 1074 (7th Cir. 1997) ...............................................................................................4

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. Pricewaterhouse Coopers*,
  212 F.R.D. 400 (E.D. Wis. 2002) ................................................................................ passim

*Heekin v. Anthem, Inc.*,
  2012 U.S. Dist. LEXIS 160864 (S.D. Ind. Nov. 9, 2012) ......................................................14

*Hispanics United of DuPage County v. Addison, Ill.*,
  988 F. Supp. 1130 (N.D. Ill. 1997) ........................................................................................6

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ...............................................................................5, 11

*In re Cabletron Sys., Inc. Sec. Litig.*,
  239 F.R.D. 30 (D.N.H.2006) ................................................................................................14

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) ...............................................................................................14

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
  130 F.R.D. 366 (S.D. Ohio 1990)........................................................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).........................................................................7

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
   142 F.R.D. 588 (S.D.N.Y. 1992) ........................................................................14

*In re Hi-Crush Partners L.P.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................................7

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)..............................................................8, 11, 14

*In re Mexico Money Transfer Litig. (W. Union & Valuta)*,
   164 F. Supp. 2d 1002(N.D. Ill. 2000) ..........................................8, 10, 11

*In re Nat'l Student Mktg. Litig.*,
   68 F.R.D. 151 (D.D.C. 1974)..................................................................................7

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   2008 WL 1956267 (S.D.N.Y. May 1, 2008) ..........................................................7

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)....................................................................................7

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ...................................................................3, 4, 7, 10

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*,
   834 F.2d 677 (7th Cir. 1987) ..................................................................................4

*Metro. Hous. Dev. Corp. v. Village of Arlington Heights*,
   616 F.2d 1006 (7th Cir. 1980) ................................................................................4

*Prandini v. Nat'l Tea Co.*,
   557 F.2d 1015 (3d Cir. 1977)................................................................................11

*Reynolds v. Benefit Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) ..................................................................................8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)....................................................................................10

*White v. NFL*,
   822 F. Supp. 1389 (D. Minn. 1993) ....................................................................14

### Rules

Fed. R. Civ. P. 23(a) and (b)(3) .....................................................................13, 14

### Other Authorities

Manual for Complex Litigation, Third, § 30.42 (1995)................................................10

Court-appointed Lead Plaintiff United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 ("Local No. 8") respectfully submits this memorandum of points and authorities in support of its motion for final approval of the Settlement of this Litigation (the "Litigation"), as set forth in the Stipulation of Settlement (the "Stipulation") dated May 26, 2015, and as preliminarily approved by the Court on June 12, 2015.[1]

## I.    <u>PRELIMINARY STATEMENT</u>

Local No. 8, along with its selected counsel Saxena White P.A., has achieved an excellent result for Great Lakes Dock & Dredge Corporation ("GLDD") shareholders in this action.  The Settlement was achieved only after hard-fought litigation for over two years, and after extensive efforts were expended by Lead Counsel.  Over the course of the Litigation, Lead Counsel conducted an extensive investigation of the claims asserted, incorporated its investigatory findings into the Amended Class Action Complaint, consulted financial experts, and engaged in an extensive, arm's-length negotiation before a respected mediator.  From the outset, Defendants adamantly denied any liability.  During settlement negotiations, Plaintiff made it clear that, while it was prepared to fairly assess the strengths and weaknesses of its case, Plaintiff would continue to litigate to a trial on the merits rather than settle for less than fair value.  Plaintiff persisted in its efforts until they achieved an amount that is fair under the circumstances of the case.

Additionally, the reaction to the proposed Settlement has been very favorable.  As of August 26, 2015, 11,558 Notice Packets have been sent to potential Settlement Class Members containing the Court-approved Notice and Proof of Claim, which explain the terms of the

---

[1] Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation.

proposed Settlement.[2]  The deadline for submission of requests for exclusion passed on August 19, 2015, and the deadline for the submission of objections expires on September 4, 2015.  The response from the Class has been overwhelmingly positive as, to date, there has not been a single objection or request for exclusion from the Settlement.  Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation, certify the Settlement Class, and enter the proposed Order and Final Judgment Approving Settlement and Dismissing the Action with Prejudice.[3]

## II.    BACKGROUND OF THE LITIGATION AND SETTLEMENT

The original purported securities class action complaint in the Litigation was filed on March 19, 2013, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.  Shareholders filed two additional putative class actions against Defendants, alleging federal securities law violations: *Boozer v. Great Lakes Dredge & Dock Corporation, et al.*, Case No. 1:13-cv-02339 and *Connors v. Great Lakes Dredge & Dock Corporation, et al.*, Case No. 1:12-cv-02450.

In its June 10, 2013 order, the Court consolidated all related actions, appointed Local No. 8 as Lead Plaintiff and approved Lead Plaintiff's selection of Saxena White P.A. ("Saxena White") as Lead Counsel and Lasky & Rifkind, LTD ("Lasky") as Liaison Counsel (ECF No. 30).  On August 9, 2013, Plaintiff filed its Amended Complaint (the "Amended Complaint"), alleging violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  ECF No. 32.

---

[2] *See* Declaration of Lester R. Hooker ("Hooker Decl."), Exhibit 1, Declaration of Stephanie A. Thurin Regarding Notice Dissemination and Publication ("Thurin Decl."), ¶11.

[3] Plaintiff's request for approval of the requested attorneys' fee and expense award and Plaintiff's Representative Reimbursement is addressed in Lead Plaintiff's Memorandum In Support Of Motion For Award Of Attorneys' Fees And Reimbursement Of Expenses And Lead Plaintiff's Representative Reimbursement, filed concurrently herewith.

On October 8, 2013, Defendants filed their motion to dismiss the amended complaint. ECF No. 37. On December 9, 2013, Lead Plaintiff filed its opposition to Defendants' motion to dismiss (ECF No. 43), and Defendants filed their reply brief on January 23, 2014 (ECF No. 44). On September 24, 2014, the Court denied Defendants' motion to dismiss. ECF No. 51. Defendants thereafter petitioned the court for reconsideration (ECF No. 49), which the Court granted on October 1, 2014 (ECF No. 53). Lead Plaintiff filed its opposition to Defendants motion for reconsideration on October 2, 2014. ECF No. 54. On October 21, 2014, the Court denied Defendants' motion to dismiss after reconsideration of the Court's initial order. ECF No. 55. The parties then jointly submitted a case management plan on November 5, 2014, ECF No. 56, which was approved by the Court on November 7, 2014, ECF No. 57.

Thereafter, the Parties began discussions concerning a possible resolution to the action, jointly submitting a stipulation to stay the proceedings, which the Court granted on November 26, 2014. ECF No. 58. The parties participated in a mediation session held in San Francisco, California with the Honorable William J. Cahill (Ret.) of JAMS on November 11, 2014. Prior to the mediation, each side submitted comprehensive mediation statements setting forth their respective positions. After extensive good-faith negotiations that occurred during and after the mediation, the Parties reached agreement on the settlement. On June 12, 2015, the Court preliminarily approved the Settlement and form of notice to be given to the Settlement Class, and set the final approval hearing for September 18, 2015. ECF No. 66.

## III.   THE SETTLEMENT MEETS THE SEVENTH CIRCUIT STANDARDS FOR APPROVAL

Settlement of class action litigation is favored by federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985); *Metro. Hous. Dev. Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir.

1980).  In deciding whether a class action settlement should be approved, courts must determine whether the proposed settlement is fair, reasonable and adequate.  *Isby*, 75 F.3d at 1196; *Hiram Walker*, 768 F.2d at 889; *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982).  Courts in this Circuit consider the following factors in evaluating the fairness of a class action settlement:

> (1) the strength of Lead Plaintiff's case compared to the amount of settlement; (2) settling defendant's ability to pay; (3) complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) evidence of collusion; (6) opinions of counsel; and (7) the stage of the proceedings and amount of discovery completed.

*Isby*, 75 F.3d at 1199; *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980); *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997).

Moreover, the settlement must be viewed in its entirety rather than focusing on any individual component.  *Armstrong*, 616 F.2d at 315.  It must also be considered in the light most favorable to the settlement.  *Id*.  The proceedings to approve a settlement should not be transformed into an abbreviated trial on the merits.  *See, e.g.*, *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987); *Armstrong*, 616 F.2d at 314-15.  Courts should hesitate to substitute their own judgment for the judgment of the litigants and their counsel.  As the Seventh Circuit has written:

> Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interest of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.

*Armstrong*, 616 F.2d at 315.  A strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations.  *Great Neck Capital Appreciation Inv. P'ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) (*citing Anderson v. Torrington Co.*, 755 F. Supp. 834, 838 (N.D. Ind. 1991)) (settlement reached after extensive mediation).  Here, the Settlement was negotiated at arm's length between Lead Counsel and

4

Counsel for Defendants, and with the assistance of a nationally-recognized mediator. Moreover, the attorneys who conducted the negotiation for the Settlement Class have many years of experience in conducting complex securities litigation, and were thoroughly conversant with the strengths and weaknesses of the case. Lead Counsel's decision, therefore, should be given great deference. *Armstrong*, 616 F.2d at 315.

As explained below, when examined under the applicable criteria, this Settlement is an outstanding result for the Settlement Class and should be approved by the Court. Lead Counsel believes that there are serious questions as to whether a more favorable monetary result against Defendants could or would be attained after trial and the inevitable post-trial motions and appeals. The Settlement achieves an immediate and substantial cash recovery for Settlement Class Members and is unquestionably superior to the distinct possibility that, were this Litigation to proceed to trial, there might be no recovery at all. Analysis of the relevant factors demonstrates that the Settlement merits this Court's approval.

### A. The Strength of Lead Plaintiff's Case Compared to the Amount of the Settlement

The "'strength of plaintiff's case on the merits balanced against the amount offered in the settlement'" supports final approval. *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011). The $1,955,000 cash Settlement represents an excellent recovery for the Class. Indeed, Lead Counsel's damage expert, Dr. Zachary Nye of the Stanford Consulting Group, a highly experienced and respected expert, has calculated the potential damages attributable to the alleged fraud under conservative models, which assume complete liability on the part of Defendants, and which indicate damages of as low as $12.9 million. Given the circumstances, the Settlement thus represents a recovery of over 15% of the Class's damages, which compares exceedingly favorably to the average settlement in securities

fraud class actions.[4]  Further evidencing the propriety of the Settlement, out of over 11,000 individual Court-approved Notices that were mailed to Class Members, not a single class member has objected to the fairness of the Settlement.  *See* Thurin Dec. ¶22.  The $1.955 million recovery obtained for the benefit of the Settlement Class is well within a range of reasonableness in light of the best possible recovery and all of the risks of continued litigation.  This amount assumes that all significant issues regarding liability and damages would be resolved in Lead Plaintiff's favor at trial.

Even if Lead Plaintiff was successful in proving liability, one of the major issues and risks going forward would have been Lead Plaintiff's ability to prove damages related to the revenue recognition, underbidding, goodwill and the accounting fraud claims stemming from Great Lake's financial restatement.  Moreover, since the restatement concerned accounting for contract adjustments within Defendants' demolition segment (specifically proper revenue recognition techniques), Defendants argued that there was no scienter attributable to these claims, and Lead Plaintiff was aware that a fact-finder could find Defendants merely negligent.

The Settlement is within, and indeed at the high end of, a reasonable range of recovery in light of the best possible recovery and the risks of continued litigation.

**B.** **Defendants' Ability to Pay Supports Approval of the Settlement**

In the context of a class-wide settlement, courts typically consider the defendant's ability to pay.  *See Hispanics United of DuPage County v. Addison*, *Ill.*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997).  Defendants' ability to pay damages in this Litigation supports approval of the Settlement.  The fact that Defendants could have paid more money does not render the

---

[4]A study by Cornerstone Research found that the median settlement as a percentage of "estimated damages" in cases having damages of less than $50 million is 9.9%.  *See* Laami T. Bulan, Laura E. Simmons, Ellen M. Ryan, Securities Class Action Settlements: 2014 Review and Analysis (Cornerstone Research 2015).

Settlement unreasonable. *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that [the defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *19 (S.D.N.Y. Nov. 8, 2010) ("[T]he mere ability to withstand a greater judgment does not suggest the settlement is unfair."). The Settlement here represents an excellent recovery given the various obstacles remaining in the Litigation and the amount of damages that could be attributable to the alleged fraud. Where, as here, the other relevant factors weigh in favor of approval, the Defendants' theoretical ability to withstand a greater judgment does not suggest the settlement is unfair.[5]

### C. The Complexity, Length and Expense of Further Litigation Supports Approval of the Settlement

In determining the fairness of a settlement, courts also consider "the likely complexity, length and expense of the litigation." *Isby*, 75 F.3d at 1199. There is no doubt that this securities class action involves complex factual and legal issues. As discussed above, the various obstacles with which the Settlement Class would necessarily be confronted "flow from the complexities and difficulties inherently involved in shareholder securities fraud litigation." *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974). Courts have long recognized that securities fraud litigation is complex and uncertain. *See, e.g., Great Neck Capital*, 212 F.R.D. at 409 ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted."). Indeed, courts have recognized that "securities actions

---

[5] *See In re Hi-Crush Partners L.P.*, 2014 WL 7323417, at *9 (S.D.N.Y. Dec. 19, 2014) ("courts generally do not find the ability to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate.").

have become more difficult from a Lead Plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).

If this case were tried rather than settled, the parties would have to continue and complete an extensive, costly and time-consuming discovery program. In the event that a settlement was not reached, potentially dozens of depositions would need to be taken, including of all of the Defendants. The Class would have to dedicate significant resources to the completion of fact discovery, with no guarantee that useful testimony would have been procured. In addition, the parties would have to conduct expert discovery, involving both the preparation of experts' reports and the depositions of the various experts. *See In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) *aff'd sub nom. In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001) ("Further litigation would undoubtedly require additional written discovery and depositions, including expert discovery. Assuming that Lead Plaintiff's claims survived Defendants' inevitable summary judgment motion, trial preparation would result in many additional hours of effort, at great additional expense. Trial of liability issues alone would run several weeks and involve numerous attorneys, experts, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the expenditure of enormous amounts of judicial and financial resources.

Even if Lead Plaintiff could recover a larger judgment after trial, the additional delay, through trial, post-trial motions, and the appellate process, could last for years. Given the time value of money, a future recovery, even one in excess of the settlement, might be less valuable to the Settlement Class than the current benefits of this Settlement. *See Reynolds v. Benefit Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now."). Thus, were this Litigation tried through to conclusion

8

rather than settled, the Litigation would be complex, time-consuming, and expensive, with the chance of obtaining a recovery greater than that provided by the settlement—or any recovery at all—far from assured. *See, e.g. Lawrence E. Jaffe Pension Plan v. Household International, Inc.*, No. 02-C-5893 (N.D. Ill.) (Initiated in 2003, and, even after a jury verdict in plaintiffs' favor on liability after seven years of litigation, the parties are still today litigating the judgment before the Seventh Circuit Court of Appeals).

The settlement secures a substantial $1.955 million benefit for the Settlement Class without the delay, risk, and uncertainty of continued litigation, and without the further expense.

**D.** **The Lack of Any Opposition to the Settlement and Plan of Allocation Strongly Supports Final Approval**

The reaction of the Settlement Class strongly supports final approval. In accordance with the Preliminary Approval Order, as of August 26, 2015, 11,558 copies of the Notice were mailed to Settlement Class Members. *See* Thurin Decl. ¶11. Notice was also published on the Claims Administrator's website and a Summary Notice was published in *Business Wire* and *Investor's Business Daily*. Thurin Decl. ¶12. The time for Members of the Settlement Class to object to the Settlement expires on September 4, 2015. Not a single Settlement Class Member has filed an objection to the Settlement or Plan of Allocation. Thurin Decl. ¶22. In addition, no Settlement Class Member has filed a request for exclusion. Thurin Decl. ¶20. This complete absence of objections and exclusions is persuasive evidence of the fairness of the Settlement. *See Great Neck Capital*, 212 F.R.D. at 410 ("A favorable reception by the class is evidence of the fairness of a proposed settlement.").

**E.** **The Settlement Is the Product of Good Faith, Arm's-Length Negotiations With The Assistance Of An Experienced Mediator**

There is a presumption of fairness for a settlement when it is the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class

action litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citing Manual for Complex Litigation, Third, § 30.42 (1995)); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) *appeal dismissed*, 710 F.3d 754 (7th Cir. 2013). No one could credibly suggest that the Settlement is the product of collusion among the parties. Indeed, no one has. As the descriptions of the proceedings above illustrate, this has been a hard-fought and contentious litigation. The settlement negotiations were long, arduous and, in fact, extended through negotiation of the Stipulation. The Settlement was reached only after several months of negotiation with the substantial assistance of Judge Cahill. As discussed earlier, a number of courts have held that a settlement is presumed fair where, as here, it is the product of arm's-length negotiations between competent and experienced counsel.

### F. Lead Counsel Strongly Endorses the Settlement

The view of the attorneys who engaged in settlement negotiations are entitled to significant weight. *See, e.g.*, *Isby*, 75 F.3d at 1200 (district court entitled to give consideration to the opinion of competent Lead Counsel that the settlement was fair, reasonable, and adequate); *Mexico Money Transfer*, 164 F. Supp. 2d at 1020 ("The court places significant weight on the unanimously strong endorsement of these settlements by Lead Plaintiffs' well-respected attorneys."). Here, experienced counsel who have weighed the risks of continued litigation endorse the Settlement and the substantial benefits it confers on Settlement Class Members. Lead Counsel, who has many years of experience in litigating securities fraud class actions, and who has negotiated numerous class-action settlements that have been approved by state and federal courts throughout the United States, has determined that the settlement is fair, reasonable, and adequate. Accordingly, this factor weighs heavily in favor of approval. In addition to Lead

Counsel's endorsement of the Settlement, Lead Plaintiff also strongly approves of the Settlement. Further, Lead Plaintiff closely supervised each phase of the Litigation, and is familiar with the merits of its case.

### G. The Stage of the Proceedings and the Amount of Discovery Completed

To ensure that a Lead Plaintiff has had access to sufficient information to evaluate both its case and the adequacy of the settlement proposal, courts in the Seventh Circuit consider the stage of the proceedings and the discovery taken. *AT&T Mobility*, 789 F. Supp. 2d at 958; *See Great Neck Capital*, 212 F.R.D. at 410 ("[T]he settlement was reached after PwC's motion to dismiss had been decided and after merits discovery was well underway. Thus, Lead Counsel's evaluation of the case was based on a reasonable amount of information."); *Mexico Money Transfer*, 164 F. Supp. 2d at 1020 (concluding that class counsel had ample opportunity to reach an informed judgment concerning the merits of the proposed settlement).

The parties here have a clear view of the strengths and weaknesses of their cases. *See In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (finding litigation sufficiently advanced for parties to evaluate respective positions where no ruling on motions to dismiss or for class certification, and discovery could be characterized as merely "fairly extensive"); *Prandini v. Nat'l Tea Co.*, 557 F.2d 1015, 1019 n.5 (3d Cir. 1977) ("One thousand plodding hours may be far less productive than one imaginative, brilliant hour") (citation omitted); *Ikon*, 194 F.R.D. at 193 (larger recovery with fewer hours expended benefits all parties). Here, both the knowledge of Lead Counsel and the proceedings themselves have reached a stage where an intelligent evaluation of the Litigation and propriety of settlement could be made.

Having sufficient information to properly evaluate the case, Lead Plaintiff and Lead Counsel settled the Litigation on terms highly favorable to the Settlement Class without the substantial expense, risk uncertainty and delay of continued litigation. Lead Counsel identified and contacted numerous potential witnesses, including former Great Lakes employees. As a result of these efforts, Lead Counsel and their investigators conducted interviews with dozens of witnesses. Lead Counsel also conferred with experts in accounting, materiality, loss causation and damages. The parties also participated in extensive settlement negotiations where the strengths and weaknesses of the parties' respective claims and defenses were fully explored.

In addition, the parties fully briefed the Defendants' motion to dismiss, which further highlighted the factual and legal issues in the Litigation. At the precipice of discovery, the parties reached an agreement to settle the Litigation at a point when they had an informed understanding of the legal and factual issues surrounding the case, and therefore, this Court should find that its analysis of this factor favors the Settlement.

## IV.  CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED

In presenting the proposed Settlement to the Court for preliminary approval, Plaintiff also requested that the Court preliminary certify the Class so that notice of the proposed Settlement, the Settlement Hearing and the rights of Settlement Class Members to request exclusion, object or submit proofs of claim could be issued. In its Preliminary Approval Order, this Court preliminarily certified the Class. ECF No. 66.

In this instance, the Court has already preliminarily granted certification of this Settlement Class in the Preliminary Approval Order entered on June 12, 2015. Nothing has changed to alter the propriety of the Court's certification as each of the requirements of Fed. R. Civ. P. 23(a) and (b)(3), including numerosity, commonality, typicality, adequacy, predominance

12

and superiority, are satisfied here. Since Lead Plaintiff fully briefed the requirements of Rule 23 in its preliminary approval papers and the Court, having reviewed those requirements, has preliminarily granted certification, rather than reproduce the applicable law here Lead Plaintiff incorporates by reference the briefing already filed with the Court. No facts have emerged since the Court preliminarily certified this Settlement Class that would warrant further inquiry. If anything, the unanimous support for the Settlement by Class Members bolsters the conclusion already reached by this Court.

For the foregoing reasons, the settlement is in all respects fair, reasonable and adequate, and should be approved.

## V.    THE FORM AND METHOD OF NOTICE WERE ADEQUATE

Plaintiffs selected Epiq Class Action & Claims Solutions, Inc., an experienced and diligent claims administrator, to administrate the notice and claims program. In connection with the proposed Settlement, the Claims Administrator disseminated an aggregate of 11,558 Notice Packets as of July 2, 2015. Thurin Decl. ¶11. Epiq published the Summary Notice in *Investor's Business Daily* and over *BusinessWire* on July 2, 2015 (*id.* at ¶12); maintained a website, at http://www.gldredgesettlement.com, which went "live" on July 1, 2015 (*id.* at ¶19); and maintained a toll-free hotline (*id.* at ¶13). The proposed Notice has been carefully drafted to contain all necessary information in plain language and in an easily accessible format. The Notice clearly advises recipients of their legal rights and obligations in connection with the Settlement, including the right to request exclusion or to object to any portion of the Settlement or to submit a completed Proof of Claim to be eligible to share in the Settlement proceeds. Contact information for Lead Counsel and the Claims Administrator is provided, as well the toll-

free number and website. Notice programs such as this have been approved in a multitude of class action settlements, and the Court should grant final approval of the Notice program here.[6]

## VI.     <u>THE PLAN OF ALLOCATION IS FAIR AND REASONABLE</u>

Lead Plaintiff also seeks approval of the Plan of Allocation of the settlement proceeds. The Plan of Allocation was set forth in the Notice mailed to Settlement Class Members. Assessment of a plan of allocation in a class action under Federal Rule of Civil Procedure 23 is governed by the same standards of review applicable to the settlement as a whole—the plan must be fair and reasonable. *Great Neck Capital*, 212 F.R.D. at 410; *Heekin v. Anthem, Inc.*, 2012 U.S. Dist. LEXIS 160864, at *8 (S.D. Ind. Nov. 9, 2012); *Ikon*, 194 F.R.D. at 184. District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

The objective of a plan of allocation is to provide an equitable basis upon which to distribute the settlement fund among eligible class members. Here, the Plan of Allocation was developed by Lead Counsel's damage expert, Dr. Zachary Nye, and reflects an assessment of how the damages that could have been recovered under the theories asserted in the case would have been distributed. The Plan of Allocation is consistent with the damages and loss causation

---

[6] *See In re Cabletron Sys., Inc. Sec. Litig.,* 239 F.R.D. 30, 35-36 (D.N.H.2006) (approving a notice program that distributed notice packets to individual investors and nominees, published a summary notice in one national newspaper, and provided a toll-free telephone hotline).

calculations, takes into account the relative strengths and weaknesses of the claims asserted in the Complaint, provides a rational basis for Class Members to recover their *pro rata* share of the recovery while avoiding windfall payments, and is substantially similar to other plans that have been routinely approved in securities class actions. The Plan of Allocation will result in a fair and equitable distribution of the proceeds among Settlement Class Members who submit valid claims. As a result, Lead Counsel believes that the Plan of Allocation—to which no Settlement Class Member has objected—is fair, reasonable, and equitable to all Members of the Settlement Class and should be approved.

## VII.    <u>CONCLUSION</u>

The Settlement here is an excellent result, given the substantial recovery, the presence of skilled counsel for all parties, the extensive settlement negotiations, the considerable risk, expense and delay if the Litigation were to continue, and the certain and immediate benefit of the Settlement to Settlement Class Members. Class certification is appropriate and the Plan of Allocation is equitable to all Settlement Class Members and is fair, reasonable and adequate. Therefore, Lead Plaintiff respectfully requests that this Court approve the Settlement of this Litigation, class certification and the Plan of Allocation as fair, reasonable and adequate.

DATED: August 28, 2015                    Respectfully submitted,

                                          **LASKY & RIFKIND, LTD.**
                                          By: */s/ Norman Rifkind*
                                          Norman Rifkind
                                          Amelia S. Newton
                                          351 West Hubbard Street, Suite 401
                                          Chicago, IL 60654
                                          Tel:  (312) 634-0057
                                          Fax:  (312) 634-0059

                                          *Liaison Counsel for Lead Plaintiff*

                                          **SAXENA WHITE P.A.**

15

Maya Saxena
Joseph E. White III
Lester R. Hooker
Brandon T. Grzandziel
5200 Town Center Circle, Suite 601
Boca Raton, FL 33486
Tel:  (561) 394-3399
Fax:  (561) 394-3082

*Lead Counsel for Lead Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 28th day of August, 2015, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

<u>*/s/ Norman Rifkind*</u>
Norman Rifkind