**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE GREAT LAKES DREDGE & DOCK CORPORATION SECURITIES LITIGATION | CASE NO. 1:13-CV-02115 <br> Honorable Charles R. Norgle, Sr. |

**DECLARATION OF LESTER R. HOOKER IN SUPPORT OF FINAL
APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION, AWARD OF
ATTORNEYS' FEES AND EXPENSES, AND LEAD PLAINTIFF'S EXPENSES**

I, LESTER R. HOOKER, declare as follows:

1.      I am a director at the law firm of Saxena White P.A. ("Saxena White").  My firm serves as Court-appointed Lead Counsel for Plaintiff United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 ("Local No. 8") and the proposed Settlement Class in this Litigation.[1]  I respectfully submit this declaration in support of Plaintiff's Unopposed Motion for Final Approval of Settlement; Class Certification; Approval of Plan of Allocation; and Award of Attorneys' Fees and Expenses and Plaintiff's Representative Reimbursement.

## I.      PRELIMINARY STATEMENT

2.      I have been personally involved in all aspects of this Litigation, including the negotiations resulting in the Settlement of the Litigation.  I have also been kept informed of developments in the Litigation by attorneys and para-professionals working with me and under my supervision.  Thus, if called upon, I can testify to the matters set forth herein.

3.      Due to the Court's familiarity with the Litigation, this declaration does not describe in detail each and every event during more than two years of hard-fought litigation. Rather, the Declaration provides the Court with a summary of the material events leading to the Settlement, and the basis upon which Lead Counsel and Plaintiff recommend its final approval, and is also intended to assist the Court in its evaluation of Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses.

4.      Below is a list of the exhibits attached hereto, which are also discussed in detail below:

---

[1] Unless otherwise noted, capitalized terms used herein shall have those meanings contained in the Stipulation of Settlement.

1

| EXHIBIT DESIGNATION | DESCRIPTION |
|---|---|
| 1 | Declaration of Stephanie Thurin Regarding Notice Dissemination and Publication |
| 2 | Declaration Of Joseph E. White, III In Support of Motion for an Award of Attorneys' Fees and Reimbursement of Expenses on Behalf of Saxena White P.A. |
| 3 | Declaration Of Norman Rifkind In Support of an Award of Attorneys' Fees and Reimbursement of Expenses on Behalf of Lasky & Rifkind, LTD. |

5.     The terms of the Settlement are set forth in the Stipulation of Settlement dated May 26, 2015 (the "Stipulation"), which was previously submitted to the Court.  The Settlement details were also included in the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Notice") and the Summary Notice.  The Settlement provides for the payment of $1,955,000 in cash, resolves all claims asserted by Lead Plaintiff against Defendants, and completely resolves this Litigation.  Pursuant to the Stipulation, the Settlement Fund has been deposited into an escrow account on behalf of the Settlement Class.

6.     While Lead Counsel believes that the allegations against Defendants[2] have merit, Lead Counsel believes that the Settlement is an excellent resolution of this Litigation under the circumstances, and that it warrants this Court's final approval.  This hard-fought litigation is evidence of the tenacity of both parties in pursuing this Litigation.  Moreover, while from Plaintiff's perspective, the allegations appeared to be supported by proof, from Defendants'

---

[2]     The term "Defendants" refers collectively to Great Lakes Dredge & Dock Corporation ("GLDD," "Great Lakes" or the "Company"), Jonathan W. Berger, Bruce J. Biemeck, and William S. Steckel.

perspective, these same facts supported Defendants' defense strategy. Defendants vigorously denied and would continue to deny all of Plaintiff's claims and allegations, including, among other things, the allegations that any Defendant made any of the alleged false and misleading statements or omissions with the requisite scienter; that such alleged misstatements or omissions caused the market prices for Great Lakes securities to be artificially inflated at any time during the Class Period; that Plaintiff or any Class Member suffered any damages as a result of the alleged disclosure of the truth; that the prices of Great Lakes shares were artificially inflated by reasons of the alleged misrepresentations, non-disclosures or otherwise; that Plaintiff and/or the Settlement Class Members can prove that any alleged statements caused their alleged losses; that Plaintiff and/or the Settlement Class Members were otherwise harmed by the conduct alleged in the Litigation; or that this action can be maintained as a class action pursuant to F.R.C.P. 23.

7. Accordingly, even if Plaintiff ultimately prevailed on the merits, there was a risk that the damages determined to be attributable to the alleged misstatements and omissions would be less than the Settlement amount, or that the recoverable damages at a much later point in the Litigation would be much less than the Settlement amount. Given the unpredictable nature of litigation, the Settlement provides the Class with a benefit now instead of years of uncertainty, including additional motion practice at the motion to dismiss stage; lengthy and costly discovery; dispositive motions; and a hotly contested trial, all of which could lead to no recovery at all.

8. The Settlement is a recovery of between approximately 15% of the estimated damages for the Class, as calculated by Plaintiff's expert damages consultant. Given the significant risks the Class faced in establishing liability and damages discussed herein and the size of the proposed Settlement, it is clear that the Settlement at this time is in the best interest of the Class.

3

9.      The Settlement is the result of extensive arms'-length and hard fought settlement negotiations.  After extensive settlement discussions during the course of the Litigation, the Parties participated in a mediation session in San Francisco, California with Judge Cahill on November 11, 2014.  Prior to the mediation, each side submitted comprehensive mediation statements setting forth their respective positions.  As a result of negotiations that occurred during and after the mediation, Plaintiff and Defendants reached an agreement on the settlement terms set forth in the Stipulation.  The negotiations were difficult and complicated by disputes on liability and damages.  The difficulties of the settlement negotiations are a testament to the quality of the result and the skill of the attorneys involved.

10.      Prior to reaching the Settlement, Lead Counsel and Plaintiff were well-informed of the strengths and weakness of the claims and defenses.  Plaintiff supervised Lead Counsel, participated in all aspects of the Litigation, remained informed and involved throughout the settlement negotiations, and approved of the Settlement in all respects.

11.      The Settlement is fair, reasonable and adequate based on the numerous impediments to recovery, the legal and practical hurdles and risks involved in proving liability and damages, as well as the further risk, delay and expense that would have been incurred had this case continued further into discovery, dispositive motions and, ultimately, to trial.  Lead Counsel respectfully submits that under these circumstances the Settlement is in the best interests of the Class, and should be approved as being fair, reasonable and adequate.

12.      In connection with the Court's final approval of the Settlement, Plaintiff requests that the Court certify a settlement class.  In presenting the proposed Settlement to the Court for preliminary approval, Plaintiff requested that the Court preliminarily certify the Class so that notice of the proposed Settlement, the Settlement Hearing and the rights of Settlement Class

Members to request exclusion, to object or to submit proofs of claim could be issued. In its Preliminary Approval Order, this Court preliminarily certified the Class. Plaintiff respectfully submits that nothing has changed to alter the propriety of the Court's certification as each of the requirements of Fed. R. Civ. P. 23(a) and (b)(3), including numerosity, commonality, typicality, adequacy, predominance and superiority, are satisfied here. Accordingly, Plaintiff requests that the Court grant final certification of the Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3), appoint Plaintiff as Settlement Class Representative and appoint Lead Counsel as Settlement Class Counsel for the Class.

13.     In addition, Lead Counsel requests that the Court approve the Plan of Allocation of settlement proceeds as being fair and reasonable. To prepare the Plan of Allocation, Lead Counsel engaged the Stanford Consulting Group, Inc., a well-recognized firm of financial economists and analysts that have assisted in crafting plans of allocation for numerous securities class actions, and has provided expert analysis and testimony in numerous securities cases, including *Liberty Media Corp. v. Vivendi Universal S.A.*, and the *Vivendi Universal S.A.*, *Enron Corporation* and *WorldCom, Inc.* securities class actions. Pursuant to the Plan of Allocation, the net settlement proceeds will be distributed on a *pro rata* basis to members of the Class who timely submit valid Proofs of Claims. Specifically, the Plan of Allocation is based upon expert application of a widely-accepted scientific methodology to the allegations in this Litigation.

14.     In addition, Lead Counsel applies for an award of attorneys' fees in the amount of $33^{1/3}\%$ of the Settlement Fund for Lead Counsel's efforts in creating this substantial benefit on behalf of the Class. Lead Counsel is also applying for reimbursement of expenses in the amount of $104,628.98, which expenses were reasonable and necessary to effectively prosecute the claims and achieve the Settlement. The percentage fee is within the range of percentages

routinely awarded in this type of complex securities class action, and is justified here in light of the results achieved, the risks undertaken, the quality of representation, and the reaction of the Class.

15.     Moreover, Lead Counsel and Liaison Counsel undertook this action on an entirely contingent basis and prosecuted the claims with no guarantee of compensation or recovery of any litigation expenses incurred.  Plaintiff's counsel received no compensation for their services, nor have they been paid for the very substantial expenses incurred since this action was initiated over two years ago.  The lengthy and vigorous nature of the Litigation has resulted in the substantial expenses of $104,628.98 being expended, as well as the investment of 1,404.25 hours of attorney and para-professional time, with a resulting lodestar of $707,732.50.

16.     Plaintiff selected, and the Court approved, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a highly experienced and diligent class action claims administrator, to administer the Class Notice, including the mailing to potential Settlement Class Members of the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing ("Notice") and the Proof of Claim and Release Form (the "Proof of Claim") (collectively, the "Notice Packet").  In connection with the proposed Settlement, the Claims Administrator received shareholder lists containing the names and addresses of Great Lakes common stock holders purchasing stock during the Class Period.  Epiq also maintains and updates an internal list of the largest and most common banks, brokers and other nominees.  As of August 26, 2015, Epiq has mailed an aggregate of 11,558 Notice Packets.  *See* Exhibit 1, Declaration of Stephanie A. Thurin Regarding Notice Dissemination and Publication (the "Thurin Decl."), ¶¶3-11.  Lead Plaintiff also published a Summary Notice, which provides a summary of the action and the proposed Settlement, and also explains how to obtain the more

detailed Notice and Proof of Claim. The Summary Notice was posted on *Business Wire* and *Investor's Business Daily* on July 2, 2015. Thurin Decl. ¶12.

17. Along with providing information about the Settlement, the Notice advised recipients that Class Members who wished to participate in the Settlement would be required to file a proper Proof of Claim, evidencing their entitlement to share in the Net Settlement Fund. The Notice also advised recipients that if they did not submit a proper Proof of Claim, they would not share in the distribution of the net proceeds of the Settlement, but would nevertheless be bound by any judgments or orders entered by the Court in the Litigation. The Notice informed recipients that Class Members who do not believe that all aspects of the Settlement, including the Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses, are fair, reasonable and adequate, have the right to object to any or all of the foregoing. The deadline to file an exclusion request was August 19, 2015. The deadline to file an objection is September 4, 2015. The deadline to submit a Proof of Claim is September 30, 2015. As of August 25, 2015, no Class Members have objected to the Settlement, and no Class Members have submitted requests for exclusion from the Settlement. *See* Thurin Decl. ¶¶20, 22.

18. If the Court approves the proposed Settlement, the claims asserted in the Litigation against Defendants shall be dismissed with prejudice upon the Effective Date (as that term is described in the Stipulation), subject to the terms of the Stipulation, and the Order and Final Judgment Approving Settlement and Dismissing the Action with Prejudice entered by the Court. For the reasons set forth below and in the accompanying memoranda of law, Lead Counsel respectfully submits that: (i) the terms of the Settlement, the notice of Settlement, Class certification and the Plan of Allocation are fair, reasonable and adequate in all respects, and

pursuant to the PSLRA and Rule 23(e) of the Federal Rules of Civil Procedure, should be approved by this Court; and (ii) Lead Counsel's request for an award of attorneys' fees and reimbursement of expenses, and Plaintiff's Representative Reimbursement, should be awarded in full.

## II.     HISTORY OF THE ACTION

19.     The original purported securities class action complaint in the Litigation was filed on March 19, 2013, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.  Shareholders filed two additional putative class actions against Defendants, alleging federal securities law violations: *Boozer v. Great Lakes Dredge & Dock Corporation, et al.*, Case No. 1:13-cv-02339 and *Connors v. Great Lakes Dredge & Dock Corporation, et al.*, Case No. 1:12-cv-02450.

20.     In its June 10, 2013 order, the Court consolidated all related actions, appointed Local No. 8 as Lead Plaintiff and approved Lead Plaintiff's selection of Saxena White P.A. ("Saxena White") as Lead Counsel and Lasky & Rifkind, LTD ("Lasky") as Liaison Counsel (ECF No. 30).  On August 9, 2013, Plaintiff filed its Amended Complaint (the "Amended Complaint"), alleging violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  ECF No. 32.

21.     On October 8, 2013, Defendants filed their motion to dismiss the amended complaint.  ECF No. 37.  On December 9, 2013, Lead Plaintiff filed its opposition to Defendants' motion to dismiss (ECF No. 43), and Defendants filed their reply brief on January 23, 2014 (ECF No. 44).  On September 24, 2014, the Court denied Defendants' motion to dismiss.  ECF No. 51.  Defendants thereafter petitioned the court for reconsideration (ECF No. 49), which the Court granted on October 1, 2014 (ECF No. 53).  Lead plaintiff filed its

opposition to Defendants motion for reconsideration on October 2, 2014. ECF No. 54. On October 21, 2014, the Court denied Defendants' motion to dismiss after reconsideration of the Court's initial order. ECF No. 55. The parties then jointly submitted a case management plan on November 5, 2014, ECF No. 56, which was approved by the Court on November 7, 2014, ECF No. 57.

22.     Thereafter, the Parties began discussions concerning a possible resolution to the action, jointly submitting a stipulation to stay the proceedings, which the Court granted on November 26, 2014. ECF No. 58. The parties participated in a mediation session held in San Francisco, California with Judge Cahill on November 11, 2014. Prior to the mediation, each side submitted comprehensive mediation statements setting forth their respective positions. After extensive good-faith negotiations that occurred during and after the mediation, the Parties reached agreement on the settlement. On June 12, 2015, the Court preliminarily approved the Settlement and form of notice to be given to the Settlement Class, and set the final approval hearing for September 18, 2015. ECF No. 66.

## III.     THE FACTORS IN SUPPORT OF THE SETTLEMENT

23.     The proposed Settlement now before the Court is the culmination of more than two years of vigorous litigation. The Settlement was negotiated by experienced counsel with a firm understanding of both the strengths and weaknesses of their respective claims and defenses. A resolution of this Litigation was achieved only through the diligent and persistent efforts detailed herein, including the participation in mediation before a highly experienced mediator.

24.     The following factors have been cited by the Seventh Circuit as pertinent criteria for evaluating the fairness of a proposed Settlement: (1) the strength of Lead Plaintiff's case compared to the amount of settlement; (2) the settling defendant's ability to pay; (3) the

complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) evidence of collusion; (6) opinion of counsel; and (7) the stage of the proceedings and amount of discovery completed.  Based on the analysis of these factors, the terms of the proposed Settlement before the Court are fair, reasonable and adequate and warrant the Court's final approval.

25.    First, the strength of Lead Plaintiff's case compared to the amount of the Settlement is in favor of the Court's final approval of the Settlement.  The $1,955,000 cash Settlement represents an excellent recovery for the Class.  Indeed, Lead Counsel's damage expert, Dr. Zachary Nye of the Stanford Consulting Group, a highly experienced and respected expert, has calculated the potential damages attributable to the alleged fraud under conservative models, which assume complete liability on the part of Defendants, and which indicate damages of as low as $12.9 million.  Given the circumstances, the Settlement thus represents a recovery of over 15% of the Class's damages, which compares exceedingly favorably to the average settlement in securities fraud class actions.

26.    Second, Defendants' ability to pay damages in this Litigation supports approval of the Settlement.  The fact that Defendants could have paid more money does not render the Settlement unreasonable.  Indeed, the Settlement here represents an excellent recovery given the various obstacles remaining in the litigation and the amount of damages that could be attributable to the alleged fraud.  Where, as here, the other relevant factors weigh in favor of approval, the Defendants' theoretical ability to withstand a greater judgment does not suggest the settlement is unfair.

27.    Third, the complexity, expense and likely duration of the Litigation counsel in favor of the Court's final approval of the Settlement.  Courts favor settlement as it conserves

valuable resources, and avoids further protracted litigation and subsequent appeals. Defendants have denied and vigorously defended against the allegations made by Plaintiff, and would continue to do so should this action proceed through trial. Absent settlement now, the Parties may face years litigating this action to final resolution, including discovery, dispositive motions, trial, and likely post-trial appeals. Thus, an immediate resolution of the Litigation is favorable and supports the Court's final approval.

28. Fourth, the Class's reaction also supports the final approval of the Settlement. Here, the deadline for Settlement Class Members to object to the Settlement expires on September 4, 2015. Not a single Settlement Class Member has filed an objection to the Settlement or Plan of Allocation as of this date. Thurin Decl. ¶22. In addition, no Settlement Class Member has filed a valid request for exclusion. Thurin Decl. ¶20. The absence of objections and exclusions, in light of the above factors, weighs in favor of the final approval of the Settlement.

29. Fifth, that the settlement is the product of good faith, arm's-length negotiations also supports the final approval of the Settlement. Indeed, there is a presumption of fairness for a settlement when it is the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. Here, no one could credibly suggest that the Settlement is the product of collusion among the parties, and no one has. Moreover, the fact that the Settlement is the product of extensive negotiations conducted with the assistance of an experienced and respected mediator and former judge further counsels in favor of the final approval of the Settlement.

30. Sixth, the opinion of counsel supports the final approval of the Settlement. In this case, experienced counsel who have weighed the risks of continued litigation endorse the

Settlement and the substantial benefits it confers on Settlement Class Members. Lead Counsel, who has many years of experience in litigating securities fraud class actions, and who has negotiated numerous class-action settlements that have been approved by state and federal courts throughout the United States, has determined that the settlement is fair, reasonable, and adequate. Accordingly, this factor weighs heavily in favor of approval. In addition to Lead Counsel's endorsement of the Settlement, Lead Plaintiff, who supervised each phase of the Litigation, also approves of the Settlement.

31.     Lastly, the stage of the proceedings supports the final approval of the Settlement. Here, Lead Plaintiff has a clear view of the strengths and weaknesses of the Class's claims. Indeed, both the knowledge of Lead Counsel and the proceedings themselves have reached a stage where an intelligent evaluation of the Litigation and propriety of settlement could be made. Having sufficient information to properly evaluate the case, Lead Plaintiff and Lead Counsel settled the Litigation on terms highly favorable to the Settlement Class without the substantial expense, risk uncertainty and delay of continued litigation. Lead Counsel identified and contacted numerous potential witnesses, including former Great Lakes employees. As a result of these efforts, Lead Counsel and their investigators conducted interviews with dozens of witnesses. Lead Counsel also conferred with experts in accounting, materiality, loss causation and damages. The parties also participated in extensive settlement negotiations where the strengths and weaknesses of the parties' respective claims and defenses were fully explored. In this action in particular, and as discussed above and in the memorandum of law, the attendant risks of continuing to prosecute the Litigation make it likely, even probable, that the Class would receive *a smaller* recovery than the amount represented in the Settlement, including the distinct possibility that the Class would receive *no recovery at all*. Accordingly, given the legal, factual

12

and practical issues present here, the Court should approve the Settlement as being fair, adequate and reasonable.

## IV.     CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE

32.     The Court's Preliminary Approval Order preliminarily certified the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities who purchased or otherwise acquired Great Lakes common stock from August 7, 2012 through August 7, 2013, inclusive, and who suffered losses as a result of their transactions. Excluded from the Settlement Class are Defendants and all officers and directors of Great Lakes, and all such excluded persons' immediate family members, legal representatives, heirs, predecessors, successors and assigns, and any entity in which any excluded person has or had a controlling interest.

33.     The Settlement Class meets the four requirements under Rule 23(a), as the Settlement Class is so numerous that joinder of all members is impracticable; the common issues of fact or law affect all Class Members; Plaintiff's claims are typical of those of the Settlement Class and arise out of the same course of conduct; and Plaintiff has fairly and adequately protected the interests of the Class.

34.     Additionally, the Litigation meets the requirements of Rule 23(b)(3)—predominance and superiority. Here, in order to sustain the claims against Defendants, the critical issues for establishing their liability include: (1) whether the Defendants made misstatements or omissions of material fact; (2) whether Class members via the investment market relied on those statements; (3) whether Defendants acted with scienter; and (4) whether Great Lakes shareholders suffered damages as a result. Moreover, concentrating litigation against the Defendants in a single forum has a number of benefits, including eliminating the risk

of inconsistent adjudication, minimizing duplication of resources, and promoting the fair and efficient use of the judicial system. The propriety of class certification for purposes of the Settlement of the Litigation is apparent as the Litigation easily meets all of the requirements of Rule 23(a) and Rule 23(b)(3).

## V.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

35.      The proposed Plan of Allocation (the "Plan"), as set forth in the Notice, provides the manner in which the Settlement Fund—less payment of Court-approved attorneys' fees and expenses, Plaintiff's Representative Reimbursement, and the costs of notice and claims administration—shall be distributed to Authorized Claimants.

36.      Lead Counsel prepared the Plan after careful consideration and detailed analysis, and with the consultation of Plaintiff's damages expert. The Plan was completely described in the Notice, with an aggregate of over 11,000 Notice Packets mailed to potential Class Members as of August 26, 2015.

37.      In order to have been damaged by the alleged fraud, an eligible security purchased or otherwise acquired during the Settlement Class Period must have been held during a period of time in which its price declined due to the disclosure of information that corrected an allegedly misleading statement or omission. Plaintiff and Plaintiff's Counsel has identified the following dates of such price declines: March 15, 2013, and August 9, 2013.

38.      Accordingly, if GLDD common stock was sold before March 15, 2013 (*i.e.*, the first corrective disclosure date), the Recognized Loss[3] for those shares is $0.00, and any loss suffered is not compensable under the federal securities laws.

---

[3] The term "Recognized Loss," is a calculation to arrive at a loss figure for purposes of calculating an Authorized Claimant's pro rata participation in the Net Settlement Fund. Recognized Loss does not necessarily reflect an Authorized Claimant's actual market loss or

14

39. For each share of GLDD stock purchased or acquired during the Class Period and held through an alleged corrective disclosure (*i.e.*, purchased prior to and held at least until March 15, 2013), then sold in the period March 15, 2013 through August 7, 2013, the Recognized Loss per share is the lesser of: (i) the amount of alleged artificial inflation per share on the date of purchase/acquisition as in Table 1 in the Notice minus the amount of alleged artificial inflation per share on the date of sale/disposition as in Table 1; or (ii) purchase price minus sale price.

40. For each share of GLDD stock purchased or acquired during the Class Period and sold during the period August 8, 2013, through November 5, 2013, inclusive (*i.e.*, the 90-day look-back period following the Class Period), the Recognized Loss per share is the lesser of: (i) the purchase/acquisition price minus the "90-Day Look-back Rolling Average Price" on the date of sale/disposition, appearing in Appendix I to the Plan of Allocation; or (ii) the amount of alleged artificial inflation per share on the date of purchase/acquisition appearing in Table 1 of the Notice.

41. For each share of GLDD stock purchased or acquired during the Class Period and held through November 5, 2013, the Recognized Loss per share is the lesser of: (i) the purchase/acquisition price minus the average closing price per GLDD share during the 90 days following the Class Period (which average closing price is $7.34); or (ii) the amount of alleged artificial inflation per GLDD share on the date of purchase/acquisition as appears in Table 1 of the Notice.

42. For Authorized Claimants who made multiple purchases, acquisitions, or sales of Eligible Securities during the Class Period, the earliest subsequent sale shall be matched first

---

gain, damages possibly recoverable at trial, or the actual amount an Authorized Claimant can expect to recover from the Net Settlement Fund.

against the Authorized Claimant's opening position in GLDD stock on the first day of the Class Period, and then matched chronologically thereafter against each purchase or acquisition of GLDD stock made through August 7, 2013. The Recognized Loss for "short sales" is $0.00. In the event that there is a short position in Eligible Securities, the date on which the short sale is covered is deemed to be the date of purchase, and the date of the short sale is deemed to be the date of sale.

43. Under the Plan, Recognized Loss will be calculated for each of Authorized Claimant's acquisitions/purchases of GLDD common stock for which adequate documentation is provided. The Recognized Loss for each Authorized Claimant is calculated as the summation of all Recognized Losses incurred by that Authorized Claimant during the Class Period. The Net Recognized Loss for each Authorized Claimant is the lesser of his/her/its Recognized Loss calculated, and his/her/its net market loss on GLDD shares purchased in the Class Period. If an Authorized Claimant had a net market gain on shares of GLDD stock purchased in the Class Period, his/her/its Net Recognized Loss is $0.00. For purposes of determining whether an Authorized Claimant had a net market loss or gain from his/her/its overall transactions in GLDD stock acquired during the Class Period, the Claims Administrator shall: (i) total the amount paid (excluding commissions and other charges) for all GLDD stock acquired during the Class Period by the Claimant (the "Total Acquisition Amount"); (ii) match any sales of GLDD stock during the Class Period first against the Claimant's holdings of each GLDD stock on close of business August 6, 2012 (*n.b.*, the proceeds of those sales will not be considered for purposes of calculating market gains or losses); (iii) total the amount received (net of commissions, etc.) for sales of the remaining GLDD stock sold during the Class Period (the "Sales Proceeds"); and (iv) calculate the "Holding Value" of GLDD stock acquired during the Class Period and still held at

16

the end of the Class Period, using the average price during the 90 days following the Class Period, which is $7.34. The Total Acquisition Amount (i) less the Sales Proceeds (ii) and less the Holding Value (iii) will be deemed a Claimant's net market loss or gain (*n.b.*, a gain occurs if a negative number is calculated) on his/her/its overall transactions in GLDD common stock during the Class Period. A payment from the Net Settlement Fund to any Authorized Claimant that would amount to less than $10.00 in total will not be included in the calculation of the Net Settlement Fund, and no payment to those Authorized Claimants will be distributed.

44.     The Plan is similar in structure to numerous plans of allocation which have been utilized and approved by courts in other securities class action cases nationwide. Accordingly, Lead Counsel believes that this method of allocation has a reasonable and rational basis, is fair and equitable, and therefore warrants the Court's approval.

## VI.    THE ADEQUACY OF THE FORM AND METHOD OF CLASS NOTICE

45.     As described above and further outlined in the memorandum in support of final approval, Plaintiff has, pursuant to the Court's Preliminary Approval Order: (i) notified Class Members of the Settlement by mailing the Notice and Proof of Claim to all potential Class Members who can be identified with reasonable effort; (ii) published the Summary Notice over *Business Wire* and in *Investor's Business Daily* on July 2, 2015; (iii) maintained a website with relevant information, including the Stipulation, Summary Notice, Notice, Preliminary Approval Order, and Proof of Claim at www.gldredgesettlement.com; and (iv) maintained a toll-free telephone number where potential Settlement Class Members could obtain information regarding the Settlement.

46.     Plaintiff's multiple component manner of providing notice gave direct notice in a reasonable manner to apprise interested parties of the pendency of the Litigation, and afforded all

potential Settlement Class Members of an opportunity to present their objections. The Notice Packet, notice publication and maintenance of a settlement website, as well as a contact number for questions regarding the Settlement, advised potential Class Members of the proposed Settlement and their rights in multiple formats. Notice programs such as this have been approved in a multitude of class action settlements.

## VII. THE FACTORS IN SUPPORT OF APPROVAL OF THE ATTORNEYS' FEE REQUEST AND REIMBURSEMENT OF LITIGATION EXPENSES

47. Plaintiff's Counsel has not received any payment for their services in prosecuting this Litigation, nor have they been paid for their expenses incurred in the prosecution of the Litigation. The Notice provides that Plaintiff's Counsel would ask the Court for attorneys' fees of $33^{1/3}$% of the Settlement Fund, and expenses not to exceed $125,000, to be paid from the Settlement Fund. As discussed in the accompanying memorandum, this requested fee falls well within the range of reasonable fees in common fund cases. The requested percentage of $33^{1/3}$ is consistent with fees awarded in comparable cases before this Court, in this Circuit and nationwide, especially given the complexity and magnitude of the action.

48. Courts have traditionally employed two methods for calculating reasonable attorneys' fees in securities class actions: the percentage-of-recovery method or the lodestar method, with Courts generally favoring the percentage of-recovery method. Courts within the Seventh Circuit generally endorse the percentage-of-the-recovery method, in an effort to best "recreate the market" for attorney's services. When analyzing the reasonableness of a fee award and attempting to award this market price, Courts within the Seventh Circuit consider, among other things, the factors listed in *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005). Each of the relevant factors supports the requested award.

49.     First, in analogous settlements, the courts in this Circuit and District including this Court, have frequently awarded fees exceeding what is requested by Lead Counsel here.  The list of fee awards submitted in Lead Plaintiff's Memorandum In Support of Motion for Award of Attorneys' Fees and Reimbursement of Expenses and Lead Plaintiff's Representative Reimbursement demonstrates that the market rate for fee awards in this District is $33^{1/3}$%, and given the many cases from within the Seventh Circuit that have awarded these fees in securities class action settlements subject to the PSLRA, the request here is eminently fair and reasonable.

50.     Second, Lead Counsel respectfully submits that the work undertaken by Lead Counsel in prosecuting this case and arriving at this Settlement has been exceptional, particularly in light of the formidable efforts and resources devoted by Defendants in defending this Litigation, and the numerous and complex factual and legal issues presented.  During the pendency of the Litigation, Lead Counsel marshaled considerable resources and time in the research, investigation, prosecution and ultimate resolution of this case.  Plaintiff's Counsel's efforts also included, *inter alia*, reviewing voluminous filings with the SEC; locating and interviewing former employees of the Company; researching industry-specific business and accounting concepts; investigating and drafting a comprehensive amended complaint; consulting with damages and accounting experts; briefing arguments made in the motion to dismiss the Amended Complaint; preparing for and engaging in hard-fought and protracted settlement negotiations, including a formal, in-person mediation session with Judge Cahill, followed by negotiating the terms of the Stipulation, and drafting the related settlement documents.  Moreover, Lead Counsel will continue to perform legal work on behalf of the Class should the Court approve the Settlement.  Additional resources will be expended assisting Class Members with their Proofs of Claim and related inquiries, and working with the Claims Administrator to

ensure the smooth progression of claims processing and to effectuate the distribution of the Settlement proceeds.

51.     Third, the risks inherent in the Litigation were substantial.  Indeed, although the Court denied Defendants' motion to dismiss the Amended Complaint, Defendants were poised to continue defending themselves.  Had the Settlement not been reached, Plaintiff would have confronted a number of substantial challenges in order to establish liability and damages. Moreover, Lead Counsel took this case on a contingent basis and litigated it more than two years without any compensation or guarantee of success.  Lead Counsel achieved this favorable result for the Class at great risk and expense to themselves.  Lead Counsel was unwavering in their dedication to the interests of the Class, and their investment of the time and resources necessary to bring this Litigation to a successful conclusion.

52.     In addition, a cross-check of the lodestar supports the attorneys' fee requested. Plaintiff's Counsel have collectively spent 1,404.25 hours in connection with the Litigation, resulting in a total lodestar of $707,732.50, from the inception of the Litigation through August 28, 2015.  Lead Counsel's requested $651,666.66 fee award, representing a $33^{1/3}$% request, thus equates to a ***negative*** lodestar multiplier of just 0.92, which is far below the ***positive*** lodestar multipliers of between 1.5 and 4 that courts frequently award across the country.

53.     Plaintiff's Counsel's fee request is thus fair and reasonable and is supported by an examination of the relevant factors.

## VIII.  LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES, AND PLAINTIFF'S REPRESENTATIVE REIMBURSEMENT, ARE REASONABLE AND SHOULD BE APPROVED

54.     In addition to a reasonable attorneys' fee, Lead Counsel respectfully seeks payment in the amount of $104,628.98 for litigation expenses reasonably incurred in connection with prosecuting the claims against Defendants.  These expenses are set forth in the declarations

from counsel attached to this declaration, and are of the type generally approved by courts for reimbursement. Counsel's declarations itemize the various categories of expenses incurred and state that these expenses were reasonable and necessary to prosecuting the claims and achieving the Settlement. The categories of expenses set forth in the declarations are consistent with costs normally billed to clients by attorneys. The reasonableness of the expenses requested is further underscored by the fact that the Notice provided that Plaintiff's Counsel would seek reimbursement of expenses not exceeding $125,000, and no objections have been filed.

55. In addition, Plaintiff respectfully submits that a Representative Reimbursement of an aggregate $5,000 is also fair and reasonable. Lead Plaintiff has expended significant time over the course of the more than two years that this Litigation has been prosecuted. Plaintiff has devoted substantial time and effort in reviewing updates, filings and paperwork relating to the motion for appointment as Lead Plaintiff; the Court's order appointing Lead Plaintiff; Lead Counsel's investigation of Defendants' allegedly fraudulent scheme; the Amended Complaint; Defendants' motion to dismiss; the extensive briefing relating to Defendants' motion to dismiss; as well as extensive involvement in the settlement process, including the review of mediation submissions, communications with Lead Counsel, and reviewing/approving the Stipulation, supporting documents and documents for preliminary and final approval of the Settlement.

56. Plaintiff expended a considerable amount of time and effort in performing these functions in actively and vigorously leading the Litigation and supervising Lead Counsel, and Plaintiff respectfully submits that a Representative Reimbursement for Local No. 8 of $5,000 is fair, adequate and reasonable under the circumstances. As discussed in the accompanying memorandum, numerous cases have approved much larger awards to compensate Lead Plaintiffs and class representatives for the time and effort devoted by them in representing the interests of

the Class. Indeed, the reasonableness of Plaintiff's Representative Reimbursement request is further underscored by the fact that the Notice provided that Plaintiff would seek a Representative Reimbursement not exceeding $5,000, and no objections to this reimbursement have been filed.

57. Accordingly, Lead Counsel respectfully request that the Court (i) approve the Settlement as being fair, adequate and reasonable; (ii) approve the Plan of Allocation as fair, adequate and reasonable; (iii) grant class certification for settlement purposes; (iv) approve the form of notice; (v) approve Lead Counsel's request for an award of attorney's fees and the reimbursement of expenses; and (vi) approve Plaintiff's Representative Reimbursement.

Dated: August 28, 2015              */s/ Lester R. Hooker*